Opinion
 

 EVANS, J.
 

 Plaintiff, Donna Pipkin, a permanent deputy sheriff acting as a matron in the Shasta County jail, received notice that she was to be
 
 *656
 
 dismissed effective six days later. The factual bases for the dismissal order were that she had given false information in explanation of her absence from work; that she entered an area in the jail carrying keys without another matron standing by, and fraternized with the prisoners; and that her fraternization interferred with the orderly administration of the jail as it caused disputes between the prisoners. She was also alleged to be insubordinate, rude, and insulting to fellow workers in the presence of others. She was discharged without having an opportunity to explain the charges against her. The Shasta County ordinance provides only for a posttermination hearing to contest the action. After an informal hearing the Shasta County Employee Appeals Board refused. to order her reinstatement, and following the board of supervisors’ refusal to hear her case, she petitioned for a writ of mandate pursuant to Code of Civil Procedure section 1094.5. Upon denial of the petition this appeal ensued.
 

 Plaintiff correctly maintains that the procedure used to dismiss her was violative of her constitutional right to due process of law in that prior to the effective date of the dismissal, she was not afforded an opportunity to explain the charges.
 
 Skelly
 
 v.
 
 State Personnel Bd.
 
 (1975) 15 Cal.3d 194, 215 [124 Cal.Rptr. 14, 539 P.2d 774], requires that the agency seeking to impose discipline afford the employee some opportunity to explain the charges
 
 prior
 
 to the effective date of the discipline. (See also,
 
 Cansdale
 
 v.
 
 Board of Administration
 
 (1976) 59 Cal.App.3d 656, 665 [130 Cal.Rptr. 880];
 
 Keely
 
 v.
 
 State Personnel Board
 
 (1975) 53 Cal.App.3d 88, 98 [125 Cal.Rptr. 398] ;
 
 Carrera
 
 v.
 
 Bertaini
 
 (1976) 63 Cal.App.3d 721, 727 [134 Cal.Rptr. 14];
 
 Ng.
 
 v.
 
 State Personnel Bd.
 
 (1977) 68 Cal.App.3d 600, 605 [137 Cal.Rptr. 387].)
 

 Defendants’ claim that the charges were discussed with plaintiff prior to her dismissal and that the discussion satisfied the pretermination due process requirement reveals a fanciful interpretation of the record and is without merit. The record reveals that several months prior to plaintiff’s dismissal Lieutenant Austin discussed some incidents with plaintiff involving her failure to follow the directions of her superior officer concerning feeding the inmates, her fraternization with them, and a letter received by the sheriff from the inmates which the officers felt had been written with plaintiff’s assistance. The record does not contain any indication that Pipkin was warned that she would be dismissed if the violations continued, nor was any punishment imposed. Austin testified that, after his conversation with plaintiff, he believed she corrected those deficiencies, and her conduct did not warrant discipline until the false absence report. Finally, Pipkin’s direct testimony was that prior to- the
 
 *657
 
 effective date of the dismissal she was not afforded an opportunity to discuss the charges with the sheriff. The record supports her testimony. The notice of dismissal fails to mention any right the employee may have to discuss the action with her superiors. The mere fact that the dismissal was not immediately effective does not cure the procedural infirmity; the reason the dismissal was not made immediately effective was that plaintiff had accrued vacation and compensatory time.
 

 “It is clear that due process does not require the state to provide the employee with a full trial-type evidentiary hearing prior to the initial taking of punitive action. However, . . . due process does mandate that the employee be accorded certain procedural rights before the discipline becomes effective. As a minimum, these preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline.”
 
 (Skelly
 
 v.
 
 State Personnel Bd., supra,
 
 15 Cal.3d at p. 215.)
 

 Shasta County Ordinance chapter 8, sections 1122 and 1123, although recognizing a right of appeal, do not provide for a hearing until
 
 after
 
 the effective date of the dismissal and fail to provide the employee with any opportunity to explain the charges to the agency initiating the action.
 

 As the ordinances do not provide for any pretermination hearing, they fail to comport with the minimal federal and state constitutional requirements held to be applicable by the United States Supreme Court in
 
 Arnett
 
 v.
 
 Kennedy
 
 (1974) 416 U.S. 134 [40 L.Ed.2d 15, 94 S.Ct. 1633] and the California Supreme Court in
 
 Skelly, supra,
 
 at page 215. Therefore, to that extent those provisions of the ordinance are unconstitutional, and the dismissal of plaintiff was affected thereby.
 

 However, the taint of the dismissal is limited inasmuch as the remedy afforded a person who has been denied the opportunity to explain the charges is restricted to an award of salary for the period from the effective date of discipline until the date of final decision after a fair hearing.
 
 (Barbery. State Personnel Bd.
 
 (1976) 18 Cal.3d 395, 402-403 [134 Cal.Rptr. 206, 556 P.2d 306];
 
 Ng v. State Personnel Bd., supra,
 
 68 Cal.App.3d 600.)
 

 Plaintiff contends she was denied due process by the terms of the ordinance which required her to bear the entire burden of proving that her discharge was improper.
 

 
 *658
 
 The record demonstrates that the administrative proceeding was very informal, and permitted all evidence presented by the employer and plaintiff to be considered by the employee appeals board. Thus, basic due process was preserved. However, we do not mean to approve the Shasta County procedures as written.
 
 Anton
 
 v.
 
 San Antonio Community Hosp.
 
 does not support the placing of the burden of proof on the disciplined employee. Rather, the
 
 Anton
 
 court upheld the laws of a hospital which placed the burden of proof on the disciplined employees since it was “clear that the bylaw read as a whole—especially when viewed in conjunction with the provision setting forth the grounds for appellate review before the governing board . . . contemplates a substantial showing on the part of the charging committee.” (Italics added.)
 
 (Anton
 
 v.
 
 San Antonio Community Hosp.
 
 (1977) 19 Cal.3d 802, 829-830 [140 Cal.Rptr. 442, 567 P.2d 1162].) In footnote 28 the Supreme Court clarifies its ruling, “the bylaw in question, by indicating that the judicial review committee shall rule against the affected person absent a clear and convincing showing on his part that the recommendation of the charging committee ‘was arbitrary, unreasonable or not sustained by the evidence,’ strongly implies that substantial evidence in support of the recommendation must appear. ... It is thus apparent that a decision unsupported by evidence viewed by the governing board as substantial—i.e., a decision based wholly upon the burdens of production and proof—is not contemplated by the bylaws.” (Italics omitted.
 
 Anton, supra,
 
 at p. 830, fn. 28.)
 

 Unlike the
 
 Anton
 
 regulations, the regulations set forth in the Shasta County code pertaining to employee appeals of disciplinary action merely require that “In discharging, suspending or reducing in rank a permanent employee, the department head shall request the County Counsel to prepare an order, in writing, stating specifically the cause for such an action.” (§ 1111.) This section of the code is the only section that requires any affirmative duty on the part of the county to produce the reasons for the disciplinary action. By the code (ch. 8, Appeals), it is incumbent upon the disciplined employee to request what is in fact an initial hearing (§ 1122) and to carry the entire burden of proof (§ 1124). The applicable portions of the county code do not require the county to produce any evidence to sustain the charge. Thus, unlike the bylaw in
 
 Anton,
 
 section 1124 violates the axiom that, “in disciplinary administrative proceedings, the burden of proving the charges rests upon the party making the charges.”
 
 (Martin
 
 v.
 
 State Personnel Bd.
 
 (1972) 26 Cal.App.3d 573, 582 [103 Cal.Rptr. 306];
 
 Johnstone
 
 v.
 
 City of Daly City
 
 (1958) 156 Cal.App.2d 506, 515 [319 P.2d 756].)
 

 
 *659
 
 The regulation, on its face, appears to violate due process.
 

 However, our review of the record convinces us that plaintiff in fact was not deprived of her due process right.
 

 We also consider whether there was substantial evidence to support the' trial court’s affirmance of the board’s decision.
 

 Parenthetically, we note at the outset that irrespective of the applicable standard of review, the trial court indicated that it reviewed the record under
 
 both
 
 the independent judgment and the substantial evidence test. As the trial court stated in a signed minute order: “. . . the Court did out of greater caution reweigh the evidence and determine that the respondents’ action was not only supported by substantial evidence, but by the preponderance of the evidence.” Additional support for the determination that the court applied the proper standard of review is found in a finding of fact which states “The Court has reviewed the transcript of the administrative proceedings held before the Employee Appeals Board, . . .” The contention that the trial court applied an improper standard of review is without merit.
 

 The scope of review is determined by the constitutional powers granted the agency under the Constitution. Where an agency possesses judicial authority under the Constitution, the decision of the agency, even if affecting a fundamental right, is entitled to all the deference and respect due a judicial decision.
 
 (Strumsky
 
 v.
 
 San Diego County Employees Retirement Assn.
 
 (1974) 11 Cal.3d 28, 36 [112 Cal.Rptr. 805, 520 P.2d 29].) However, if the agency does not possess judicial powers, the scope of review is determined by the nature of the right affected.
 
 (Id.,
 
 at p. 32.)
 

 “With respect to charter cities and counties such powers and procedures are prescribed by means of legislative approval or disapproval of the charter presented to the Legislature. In each case, however, the Legislature is limited in the nature and extent of the powers which it may grant. With respect to legislative powers, the question is one of proper delegation of powers vested in the Legislature itself by article IV.”
 
 (Id.,
 
 at p. 40.) It is limited by the powers bestowed in other branches of government in articles V and VI. The amendment of article VI had the effect of withdrawing from the Legislature the ability to vest judicial power
 
 in any
 
 body and of concentrating in the court system all judicial power not expressly bestowed elsewhere by the Constitution.
 

 
 *660
 
 As the powers bestowed on counties in the Constitution do not mention judicial powers “[i]f the order or decision of the agency substantially affects a fundamental vested right, the trial court, in determining under section 1094.5 whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence. If, on the other hand, the order or decision does not substantially affect a fundamental vested right, the trial court’s inquiry will be limited to a determination of whether or not the findings are supported by substantial evidence in light of the whole record.”
 
 (Id.,
 
 at p. 32.)
 

 In considering this issue, the trial court was under the basic misapprehension, apparently created by counsel for defendant, that because a fundamental right may not exist under the federal Constitution, a finding of such a right under the California Constitution is precluded. “ ‘[Decisions of the United States Supreme Court defining fundamental rights are persuasive authority to be afforded respectful consideration, but are to be followed by California courts only when they provide no less individual protection than is guaranteed by California law.’ [Citations.]”
 
 (Serrano
 
 v.
 
 Priest
 
 (1976) 18 Cal.3d 728, 764 [135 Cal.Rptr. 345, 557 P.2d 929]; see also Cal. Const., art. I, § 24.) Therefore, were we to conclude, as defendant suggests, that
 
 Bishop
 
 v.
 
 Wood
 
 (1976) 426 U.S. 341 [48 L.Ed.2d 684, 96 S.Ct. 2074] stands for the proposition that a public employee does not have a property right in continued public employment, it would not resolve the issue created by the provisions of the California Constitution which, although substantially equivalent to the federal constitutional protections, are possessed of an independent vitality.
 
 (Serrano
 
 v. Priest,
 
 supra,
 
 at p. 764.) The trial court erroneously concluded that decisions such as
 
 Bishop
 
 v.
 
 Wood, supra,
 
 control the determination of whether the plaintiff was a possessor of a property right under the California Constitution and that the court was precluded from any inquiry into the matter. It is readily apparent that greater protection for the individual is afforded by viewing the right to be protected from arbitrary or capricious discharge from public employment as a property right; the California decisions and Constitution are here dispositive.
 

 In California, “The courts must decide on a case-by-case basis whether an administrative decision or class of decisions substantially affects fundamental vested rights and thus requires independent judgment review.”
 
 (Bixby
 
 v.
 
 Pierno
 
 (1971) 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242].) “ ‘In determining whether the right is fundamental the courts
 
 *661
 
 do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation.’ ”
 
 (Strumsky, supra,
 
 at p. 45.) In determining whether a right is “vested” or “fundamental” the courts have considered the degree to which that right is already possessed by the individual. The courts have held the loss of it sufficiently vital to require independent review. “The abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction.”
 
 (Bixby
 
 v.
 
 Pierno, supra, 4
 
 Cal.3d at p. 144.)
 

 It is beyond question that the right of continued employment is so important and so substantially affects the individual that it is a fundamental right. Whether the employment right of plaintiff was vested requires only minimal discussion. It is to be emphasized that this case does not present the simple nonrenewal of a probationary employee’s contract, but rather the discharge of an already permanent employee. In the former situation as in
 
 Turner
 
 v.
 
 Board of Trustees
 
 (1976) 16 Cal.3d 818 [129 Cal.Rptr. 443, 548 P.2d 1115], no fundamental vested right exists; in the latter such fundamental vested right does. It is undisputed that plaintiff was a permanent employee of the Shasta County Sheriff’s Department.
 
 Turner
 
 v.
 
 Board of Trustees, supra,
 
 which defendants urge controls this case, is distinguishable as it dealt with the nonrenewal of a probationary employee’s contract. In addition, since that case was dealing with a teacher, there were important policy considerations favoring the nonrenewal of an unsatisfactory teacher who was frustrating the primary purpose of the school system in educating the young.
 
 (Id.,
 
 at p. 825.)
 

 Contrary to defendants’ contentions, merely because the sheriff utilized a system of semiannual performance reports for evaluating employees, plaintiff’s employment may not be rendered probationary or tentative in effect.
 
 (Anton
 
 v.
 
 San Antonio Community Hosp., supra,
 
 19 Cal.3d at p. 824.) The full rights of continued employment
 
 vest
 
 upon appointment, subject to divestment upon periodic review only after a showing of adequate cause for such divestment in a proceeding consistent with minimal due process requirements. Defendants’ contention that since county ordinance section 1110 requires a statement of reasons for disciplinary action, an employee may not be tenured, is patently absurd. The statute merely specifies that dismissals must be effected in accord with due process. In addition, plaintiff’s duties do not suggest that she served in a confidential position at the pleasure of the appointing authority nor has it been suggested that any other statute exists which expressly provides that her employment was at the pleasure of her employer. In fact, statutes or ordinances providing that employment shall
 
 *662
 
 be at the pleasure of the appointing authority generally contain terminology vesting the employer with the unabridged right to remove any employee without specification of reasons. (See
 
 Bogacki
 
 v.
 
 Board of Supervisors
 
 (1971) 5 Cal.3d 771, 775 [97 Cal.Rptr. 657, 489 P.2d 537];
 
 Healdsburg Police Officers Assn.
 
 v.
 
 City of Healdsburg
 
 (1976) 57 Cal.App.3d 444, 451 [129 Cal.Rptr. 216];
 
 Hollon
 
 v.
 
 Pierce
 
 (1967) 257 Cal.App.2d 468, 478, fn. 4 [64 Cal.Rptr. 808];
 
 Abel
 
 v.
 
 Cory
 
 (1977) 71 Cal.App.3d 589, 594 [135 Cal.Rptr. 555].) The findings are conclusive that plaintiff was a permanent employee, and as such had a fundamental vested right in continued employment. Therefore, the independent judgment test was applicable.
 

 We reject defendants’ attempted distinction of the proper scope for review of disciplinary actions taken under a civil service system and a merit system, as a distinction without a difference. The basis for applying different standards of review “can be traced to their ultimate source in one of our most fundamental constitutional doctrines, that of separation of powers.”
 
 (Strumsky, supra,
 
 at p. 35.) As persons charged with the exercise of a power, either legislative, executive, or judicial, cannot exercise any other power unless expressly authorized by the Constitution, a court, in reviewing a decision of an agency vested with judicial power under the Constitution, must afford the determination of that agency all the deference and respect due to a judicial decision.
 
 (Strumsky, supra,
 
 at pp. 35-36.)
 

 The trial court out of a justifiable abundance of caution utilized the independent review standard.
 

 Defendants’ claim that power under a merit system is reposed in the electorate, not an administrative agency, misconstrues the source of origin of the powers of counties. It is the state, not the counties, in whom the electorate has vested power. (See Cal. Const., art. IV, § 1; art. XI, § 1, subds. (a) and (b); art. II, § 1.) The counties, as legal subdivisions of the state, derive their power from the power delegated by the People to the state, and specifically delegated to the Legislature, which in turn has authorized the counties to create either a civil service system or limited civil service system. (See art. XI, § 1, subd. (a); Gov. Code, §§ 31100-31110.) Finally, it should be noted that a contention that
 
 Skelly
 
 is applicable only to civil service employees and not to employees who are employed for an indefinite term, was rejected in
 
 Mendoza
 
 v.
 
 Regents of University of California
 
 (1978) 78 Cal.App.3d 168, 173 [144 Cal.Rptr. 117].
 
 *663
 
 There, as here, “[defendant’s] contentions are predicated on an obvious misconception of law.”
 
 (Ibid.)
 

 Our review of the trial court proceeding is limited to an examination of the record to determine whether substantial evidence supports the decision of the trial court.
 
 (Bixby
 
 v.
 
 Pierno, supra,
 
 4 Cal.3d at p. 143, fn. 10;
 
 LeVesque
 
 v.
 
 Workmen’s Comp. App. Bd.
 
 (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432];
 
 Boreta Enterprises, Inc.
 
 v.
 
 Department of Alcoholic Beverage Control
 
 (1970) 2 Cal.3d 85, 95 [84 Cal.Rptr. 113, 465 P.2d 1].)
 

 Plaintiff was charged with three distinct courses of conduct warranting dismissal, which the board found to be supported by the evidence: first, she was charged with falsely informing the sheriff’s office of the reason for an absence on July 3 and 4, 1976; second, that she fraternized with the prisoners on numerous occasions thereby hindering effective administration of the jail and creating a danger that her keys might be taken from her while with the prisoners inside the day room; and third, that she was rude and insulting to other employees, directed profanity toward them, and was insubordinate to her superiors.
 

 Plaintiff maintains that the decision of the board may not be affirmed and was based solely on hearsay.
 
 (Nardoni
 
 v.
 
 McConnell
 
 (1957) 48 Cal.2d 500, 504 [310 P.2d 644];
 
 Layton
 
 v.
 
 Merit System Commission
 
 (1976) 60 Cal.App.3d 58, 67-68 [131 Cal.Rptr. 318]; see also Gov. Code, § 11513, subd. (c).) Her contention is not supported by the record. It appears that the trial court and the board did find and consider substantial credible evidence in support of the dismissal without reliance on hearsay.
 

 The evidence in spport of the charge that she gave false reasons for her absence from duty was supplied by her own admission and was confirmed by her husband’s testimony. The board’s finding on that charge is supported by substantial evidence.
 

 The finding that plaintiff was rude and insulting, used profanity, and was insubordinate was established by the testimony of fellow employees who witnessed the incidents and by her admission that she engaged in a personal dispute and used profanity with Deputy Johanson.
 

 The finding that plaintiff fraternized with the prisoners, disclosed information about the administration of the jail, and entered the “tank” with her keys, thus constituting a hindrance to the effective administra
 
 *664
 
 tion of the jail, is troublesome. Direct evidence supporting that finding was elicited from admittedly biased inmates and a memorandum, written by a deputy (deceased at the time of the hearing), detailing an incident which happened seven months previously. In February plaintiff was advised (without imposition of discipline) that such conduct was unsatisfactory and must be stopped. Thereafter, it appears plaintiff did comport herself in a satisfactory manner, and no further information of continued fraternization which would justify disciplinary action was received. Inasmuch as the alleged fraternization was apparently not repeated following the warning, a question as to the propriety of the dismissal predicated upon those charges is presented. However, it is a question going to the weight of the evidence, and in reviewing the record it does not appear that an abuse of discretion resulted.
 
 (Skelly, supra,
 
 at p. 217.) We note that inmates Connors and Miller testified that plaintiff entered the cell area without another guard standing by, played cards with the inmates, and discussed and talked about other matrons with them. Connors, who admitted she disliked plaintiff, testified that she observed plaintiff give keys to other inmates; that plaintiff was nicknamed “Ducky” by the inmates, and that plaintiff helped the inmates write a letter praising plaintiff’s conduct. Additionally, plaintiff admitted entering the cell and playing cards with the inmates and another matron. Matron O’Quinn testified that she saw plaintiff playing cards in the cell but couldn’t remember the date, and that inmates told her about plaintiff’s conversations with other inmates concerning the jail staff.
 

 We conclude the board’s decision is supported by substantial evidence.
 

 The judgment is reversed and remanded to the trial court with directions that the Shasta County Employee Appeals Board be ordered to compute and award plaintiff accrued salary in accord with this opinion. The judgment is otherwise affirmed.
 

 Reynoso, J., concurred.
 

 Puglia, P. J.—I concur in the judgment.