[No. F008277. Fifth Dist. Mar. 1, 1988.]

ZORA S. GILL, Plaintiff and Appellant, v.
MERCY HOSPITAL et al., Defendants and Respondents.

**COUNSEL**

Lawrence Silver, Louis M. Natali, Jr., Shelli J. Black and Elizabeth Karen Reinhart for Plaintiff and Appellant.

Jay D. Christensen and Girard, Ellingsen, Christensen & West for Defendants and Respondents.

OPINION

BROWN (G. A.), J.*—Appellant, Zora Gill, M.D., appeals from a judgment of the superior court denying a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) for review of Mercy Hospital administrative proceedings culminating in the denial to Dr. Gill of full surgical staff privileges by the board of directors of the hospital.[1]

Upon his application, Dr. Gill was granted provisional staff privileges at Mercy Hospital in the latter part of October 1983 authorizing him to do a broad spectrum of surgery with monitors.[2]

In the latter part of 1984 Dr. Gill requested to be released from all surgical monitoring. The hospital, through its appropriate committees, conducted an investigation into Dr. Gill's surgical practices which culminated on April 24, 1985, in an executive committee determination to advance Dr. Gill to courtesy staff with privileges to perform some simpler procedures without monitoring; these included hernia repair, hemorrhoidectomy, appendectomy, skin biopsy, pilonidal cysts, routine gallbladders, arterioulnoses shunts and arteriovenous fistulas performed in an extremity for access. All other general and vascular surgical procedures required the use of a monitor.

Exercising his right under the hospital bylaws, appellant requested a hearing before an ad hoc hearing committee. An ad hoc hearing committee was appointed, consisting of seven staff doctors who had not participated in any of the adverse recommendations of the executive committee, and an attorney hearing officer. The attorney's participation was limited to advice on procedural issues to assure compliance with the bylaws at the hearing. Dr. Gill appeared personally and by a physician of his choice. The medical staff was also represented by a medical doctor.

The charges, which were timely served on Dr. Gill, allege he "exhibited a pattern of substandard surgical technique for vascular and complex surgical

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1] During all times pertinent herein the hospital had in place comprehensive written bylaws governing the hearing and appellate procedures to be followed when a doctor receives notice of an executive committee action which "will adversely affect his appointment to or status as a member of the medical staff or his exercise of clinical privileges."

[2] Monitoring of newly appointed surgeons is required by hospital licensure regulations (Cal. Code Regs., tit. 22, § 70701, subd. (a)(6)), Standards of the Joint Commission on Accreditation of Hospitals (1987) page 122, corporate liability standards (see *Elam v. College Park Hospital* (1982) 132 Cal.App.3d 332 [183 Cal.Rptr. 156]) and by the hospital's staff bylaws.

cases" and that he "exhibits a pattern of poor medical judgment in connection with major surgical cases." These charges were supported by reference to 17 monitor reports which were presented through 6 physician witnesses.

Appellant had the opportunity to present his case and to engage in any questioning of witnesses he wished.

Following the hearing, the committee voted six to one in favor of the executive committee's recommendation limiting Dr. Gill's hospital privileges. In support of the decision, the committee found: "1. Dr. Gill's performance in several cases demonstrated either significant errors in judgement [sic] or a significant problem in technique related to major general or vascular surgery; [¶] 2. Dr. Gill demonstrated particularly poor surgical judgement [sic] in connection with Case #136165, in which surgery was excessively delayed in the case of a spleen injury; [¶] 3. Dr. Gill's monitor reports at Mercy Hospital constitute a sufficient pattern and number of reports to demonstrate that he failed to make expected improvement in surgical technique in major general and vascular cases during his tenure as a member of the provisional staff; [¶] 4. Dr. Gill failed to adequately refute the charges contained in the Notice of Charges substantiated by monitor reports; and, [¶] 5. Neither Dr. Gill, nor his witnesses, presented objective evidence showing excellent surgical technique and judgement [sic] in patient care to counter the recommendation of the Executive Committee."

Pursuant to the bylaws, Dr. Gill appealed to the board of directors of the hospital. At the hearing before the board, appellant was represented by an attorney and presented additional clinical evidence in the form of a letter and report by Robert Pereyra, M.D., addressing cases which had been presented to the ad hoc hearing committee; through counsel he also presented a legal brief. In response, Dr. Deaner, representing the medical staff, presented rebuttal to Dr. Pereyra's letter.

Sister Phyllis Hughes, president of the hospital and member of the board of directors, disqualified herself from participation in the appellate process. Hughes took this action because she had written a letter regarding one of the monitored cases and was present during the deliberations of the ad hoc committee.

The board of directors upheld the ad hoc committee's decision.

This petition to the superior court followed.

## DISCUSSION

■ Appellant raises numerous arguments in support of his prayer for reversal. We shall consider those points seriatim. However, before doing so,

we observe that many of his points urge a violation of constitutional due process. It is settled that when "a private association is legally required to refrain from arbitrary action, the association's action must be both substantively rational and procedurally fair." (*Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 550 [116 Cal.Rptr. 245, 526 P.2d 253].) The essence of the concept is that the action cannot be arbitrary or capricious. It is more appropriate to refer to this standard in terms of "fair procedure" in a nonconstitutional sense rather than due process in the constitutional sense. (*Id*. at p. 550, fn. 7.) The essence of the right is one of fairness. (*Applebaum* v. *Board of Directors* (1980) 104 Cal.App.3d 648, 657 [163 Cal.Rptr. 831].)

I

*Substantial Evidence*

■ Appellant argues that substantial evidence does not support the decision. Code of Civil Procedure section 1094.5, subdivision (d)[3] establishes the substantial evidence test as the applicable standard of review. When an appellate court is reviewing a quasi-judicial decision of a governing body of a private hospital, the function of the appellate court is the same as that of the trial court in conducting the review. Therefore, this court should review the entire record to determine whether the decision is supported by substantial evidence. (See *Pick* v. *Santa Ana-Tustin Community Hospital* (1982) 130 Cal.App.3d 970, 979-980 [182 Cal.Rptr. 85]; see also *Schmitt* v. *City of Rialto* (1985) 164 Cal.App.3d 494, 501 [210 Cal.Rptr. 788].) ■ In this regard, we are cognizant of the strong public policy in favor of effective medical peer review by hospitals. In *Unterthiner* v. *Desert Hospital Dist.* (1983) 33 Cal.3d 285 [188 Cal.Rptr. 590, 656 P.2d 554], the Supreme Court recognized that a "doctor's license . . . does not determine qualification for hospital privileges or establish competence to engage in specialties in the hospital . . . ." Indeed, the "determination of the standards to be applied in granting privileges involves a legislative judgment [citation], and just as courts have largely deferred to administrative expertise in determining whether an applicant is qualified to practice a profession . . . they should defer to administrative expertise in determining whether the professional is qualified to take on the additional responsibilities involved in a grant of hospital privileges." (*Id*. at p. 298; see also *Cipriotti* v. *Board of Directors* (1983) 147 Cal.App.3d 144, 157 [196 Cal.Rptr. 367].)

---

[3] Code of Civil Procedure section 1094.5, subdivision (d), provides in relevant part: "(d) Notwithstanding subdivision (c), in cases arising from private hospital boards . . . , abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record . . . ."

■ Substantial evidence clearly supports the decisions of the hospital board, the ad hoc committee and the trial court in this case. The charges filed against appellant alleged he (1) "exhibited a pattern of substandard surgical technique for vascular and complex major surgical cases," and (2) "exhibited a pattern of poor medical judgment in connection with major surgical cases." At the ad hoc committee hearing the various physicians who prepared the monitor reports presented those reports to the committee. Patient charts and a letter from a hospital radiologist were also introduced to support the charges.

The first monitor report was presented by Dr. Deaner who observed appellant while he performed a femoral bypass. In the report, Dr. Deaner criticized appellant for using a graft that was too long. Dr. Deaner noted that because appellant had to remove a section of the graft, the procedure was lengthened 20-30 minutes.

The next case presented by Dr. Deaner involved the insertion of a graft in the left forearm of a patient. Dr. Deaner's criticism focused on the fact the graft soon failed, requiring two further surgeries to declot the graft. Although appellant was of the opinion these grafts had a 20 percent failure rate, the other physicians at the hearing felt the failure rate was actually only 5 percent.

In the third case Dr. Deaner was critical of appellant's decision to tie a knot inside an artery. Although Dr. Deaner reported appellant recognized his own error and removed the stitch, Dr. Deaner felt this was an error that should not have been made.

In the next report Dr. Deaner was critical of appellant's rough handling of tissue. In the final case presented by Dr. Deaner, he observed a tremor in appellant's hands as he began to operate. Dr. Deaner also noted that additional sutures had to be placed in the artery.

Dr. Loos was the next physician to present a series of monitor reports. In his first report, Dr. Loos was critical of appellant's choice of procedure given the patient's prior medical history. Based on the history Dr. Loos felt appellant should have concluded his chosen procedure would prove unsuccessful in the long run.

In the next report Dr. Loos had only a minor criticism involving excessive bleeding. The third case monitored by Dr. Loos involved the removal of gallbladder stones from a patient with a history of injury to the common duct tissue. Dr. Loos was of the opinion appellant should have selected a more experienced assistant for such a complex surgery. Dr. Loos also

criticized appellant's suturing technique, which he instructed appellant to redo during surgery. Dr. Loos believed that if the suturing was not corrected leakage would occur.

In his next report Dr. Loos was critical of appellant's decision to remove an appendix while performing surgery to correct another problem. It was Dr. Loos's opinion the surgery should be left as straightforward as possible to avoid potential problems with infection.

The next case reported by Dr. Loos which is relevant to the first charge involved a surgery scheduled by appellant to repair a hernia. Dr. Loos felt the patient was too ill for the surgery. After Dr. Loos discussed his concerns with appellant, the surgery was cancelled.

Dr. O'Reilly, in his presentation, felt appellant's surgical technique was rough and his use of the assistant not effective. In addition, Dr. O'Reilly felt appellant's surgical techniques did not meet the average standard of care.

Dr. Charles Owens reported on a case where, again, appellant performed an appendectomy while performing another surgical procedure. Dr. Owens believed the appendectomy should not have been performed given the age of the patient.

The next case presented did not involve a monitor report of a surgery, but consisted of a letter by Dr. Maclennan, prepared after his contact with a case. In this case involving a juvenile, Dr. Maclennan was asked to perform a CT scan to rule out a spleen injury. Dr. Maclennan became very concerned over the patient's condition and immediately phoned appellant. Dr. Maclennan was concerned because, although the patient seemed acutely ill, the CT scan was ordered as a nonemergency procedure. When he was not immediately able to reach appellant, Dr. Maclennan performed the scan and noticed a blood density surrounding the spleen. Upon finally talking to appellant, Dr. Maclennan impressed upon him the severity of the injury. Dr. Maclennan was of the opinion appellant did not fully understand the urgency of the situation at first.

At this point in the hearing, appellant explained that he moved slowly on this case because of the patient's mother, who did not want to leave her child in the hospital. After talking to her for quite some time, appellant was able to get her to agree to admit the child and schedule a CT scan. Because the patient was stable, appellant felt it was appropriate to wait awhile for the family to come to an agreement on surgery. Appellant also noted that at the time Dr. Maclennan called him, he had already received a report showing the patient's hemoglobin count to be low and was in the process of

trying to explain to the family surgery was needed immediately. Once the family agreed, appellant stated there was a delay in getting into surgery because an operating room was not available.[4]

Related to this case, a memorandum from Sister Phyllis Hughes was put into the record. In the memorandum, Sister Hughes reported a conversation she had with the mother of the patient in the juvenile spleen case last referred to. The mother told Sister Hughes she had been contacted by appellant and asked to write a letter stating her son's surgery was delayed at her request. The mother did not want to write the letter because, she told Sister Hughes, appellant advised her to wait on surgery to see if the bleeding would stop on its own. Sister Hughes thereafter told the mother she felt the letter was unnecessary.[5]

The final monitor report was presented by Dr. Palitz and involved a hemorrhoidectomy. Dr. Palitz criticized the postoperative care of the patient, which he did not feel was adequately supervised by appellant.

At this point appellant was given the opportunity to respond to the evidence presented on behalf of the executive committee. Appellant addressed some of the criticism and explained his actions in each case. A physician who assisted appellant on at least one surgery expressed his opinion that appellant's surgical skills were good. Finally, appellant was very critical of the monitoring system which he claimed forced him to transfer cases when monitors were not available and to delay surgeries.

At the hearing before the hospital's board of directors, appellant was permitted to present additional clinical evidence in the form of a letter from Robert Pereyra, M.D., of Los Angeles, which contained a detailed response to the monitored cases which had been presented to the ad hoc hearing committee. Dr. Deaner, on behalf of the medical staff, presented rebuttal comments to the observations and conclusions of Dr. Pereyra. The recited evidence clearly supplies substantial evidence to support the conclusions appellant exhibited a pattern of substandard surgical techniques and poor medical judgment in connection with major surgical cases. Appellant's selective recitation of favorable evidence appearing in the record does not compel a contrary result. It is not appropriate that this court resolve

---

[4] The superior court in its tentative decision disregarded the evidence surrounding the juvenile spleen case. The court felt appellant was unfairly deprived of access to the monitor report of the surgery in this case. However, the court was still able to conclude there was adequate evidence to support the findings of the ad hoc committee.

[5] In its tentative decision, the superior court found Sister Hughes had unfairly prevented appellant from obtaining evidence by her actions. However, because the facts of this particular case were not considered by the court in its decision, the court concluded appellant was not prejudiced.

conflicts in the evidence favorable to the appellant; it is our legal obligation to resolve conflicts in support of the judgment.

## II

### *Representation by Legal Counsel*

The bylaws provide: "e. The affected practitioner shall be entitled to be accompanied by and represented at the hearing by a member of the medical staff in good standing or by a member of his local professional society.

". . . . . . . . . . . . . . . . .

"j. The hearings provided for in these bylaws are for the purpose of resolving, on an intra-professional basis, matters bearing on professional competence and conduct. Accordingly, neither the affected practitioner, nor the Executive Committee of the medical staff or the Board of Directors, shall be represented at any phase of the hearing procedure by an attorney at law unless the Board of Directors, in its discretion, permits both sides to be represented by counsel. The foregoing shall not be deemed to deprive the practitioner, the Executive Committee of the medical staff, or the Board of Directors of the right to legal counsel in connection with preparation for the hearing or for a possible appeal. If a hearing officer is utilized, he may be an attorney at law."

▮ Appellant was represented by a doctor but was denied the right to be represented by a lawyer at the ad hoc committee meeting. He was so notified in the charging document. He was, however, represented by an attorney at the hearing before the board of directors. He contends this denied him a fair hearing before the ad hoc committee.

In *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 827 [140 Cal.Rptr. 442, 567 P.2d 1162], the hospital's bylaws provided in substance that because the hearing was for the purpose of intraprofessional resolution of matters bearing on conduct or professional competency, attorney representation would not be permitted. The Supreme Court held that due process or the requirement of a fair hearing is not violated when the hospital does not permit the doctor to be represented by counsel at a factual peer review hearing.

In *Cipriotti* v. *Board of Directors, supra,* 147 Cal.App.3d 144, the court upheld the right of California hospitals to pursue peer review by a medical staff hearing without attorney representation and concluded due process was not violated. (*Id.* at p. 157.)

■ Appellant argues the results in these cases should be changed because of the provisions of Business and Professions Code section 805 and the effect of a recent federal antitrust case entitled *Patrick* v. *Burget* (9th Cir. 1986) 800 F.2d 1498, certiorari granted, October 5, 1987, 484 U.S. 814 [98 L.Ed.2d 29, 108 S.Ct. 65]. He argues that these two authorities require the presence of retained counsel at the hearing before a peer review committee. We disagree.

Business and Professions Code section 805 requires hospitals to report to the State Board of Medical Quality Assurance, the state physician licensing agency, when hospital action is taken regarding a physician's staff privileges. This requirement was in effect since 1979, long before the decision in *Cipriotti* v. *Board of Directors, supra,* 147 Cal.App.3d 144, holding that the presence of an attorney at a hospital staff peer review proceeding is not required. We fail to perceive how the reporting requirement has such a drastic effect upon the proceedings as to require representation by an attorney.

As has been pointed out, the purpose of the peer review process is to resolve intraprofessionally matters bearing upon a physician's competency and conduct. To this end, the affected physician is entitled to be represented by another physician on the medical staff or from the local professional society. Furthermore, the bylaws specify numerous provisions which are meant to guarantee the affected physician a fair proceeding. These include prompt notice of the charges, together with the documentary support for the charges; adequate time to prepare to meet the charges; a hearing before a committee of doctors who have no prior involvement in the charges; representation by a fellow doctor; the right to appeal to the board of directors of the hospital and representation by counsel at the appellate hearing.

The purpose of the proceeding is to review highly technical documents and medical reports dealing with the doctor's performance in an area where experts in the same field can arrive at a decision without the controversial and contentious atmosphere which would likely be created by the participation of attorneys. Medical staff hearings involve highly educated individuals. There is little risk that a physician will be erroneously deprived of staff privileges if he is not allowed counsel at the hearing. The physician's position is decidedly dissimilar to that of a criminal defendant or an incarcerated defendant faced with a civil suit involving the potential for substantial civil damages (*Payne* v. *Superior Court* (1976) 17 Cal.3d 908 [132 Cal.Rptr. 405, 553 P.2d 565]) or a welfare recipient whose benefits are being terminated (*McCullough* v. *Terzian* (1970) 2 Cal.3d 647 [87 Cal.Rptr.195, 470 P.2d 4]) or a minor committed to a state psychiatric facility (*In re Roger S.* (1977) 19 Cal.3d 921, 938 [141 Cal.Rptr. 298, 569 P.2d 1286]).

Appellant's argument with regard to *Patrick* v. *Burget, supra,* 800 F.2d 1498, is wanting. In that case, which arose in the State of Oregon, the court determined that state-mandated medical staff peer review actions are exempt from federal antitrust statutes under the "state action" antitrust doctrine where the state requires private parties to conduct peer review and supervise the process through administrative and judicial review. From that premise, appellant argues that the California law is similar to the Oregon law, that a state action in the antitrust statute is the same as state action in the constitutional due process sense, that federal constitutional due process therefore applies to peer review proceedings and, finally, that federal due process requires the presence of an attorney at peer review hearings. This concatenated argument is flawed by the weakness of the links connecting the premise with the ultimate conclusion. "State action" as used in the antitrust statutes to exempt the state from the Sherman Antitrust Act has no essential relationship to "state action" as a prerequisite to the invocation of federal due process under the United States Constitution. Indeed, federal cases on the subject have held that actions of a private hospital in medical staff proceedings, like the instant case, are not sufficiently involved with the state or federal governmental authority to qualify as "state action" that is subject to the procedural due process requirements of the United States Constitution. (*Goss* v. *Memorial Hosp. System* (5th Cir. 1986) 789 F.2d 353; *Lubin* v. *Crittenden Hosp. Ass'n.* (8th Cir. 1983) 713 F.2d 414.)

Secondly, assuming there is state action so as to require compliance by the state with federal due process, appellant cites no case in a hospital peer review context holding that federal due process requires that a doctor subject to such a review be afforded an opportunity to be represented by an attorney. Indeed, for the reasons we have discussed, fundamental fairness does not require legal representation. Essentially there is no real difference between fair procedure and due process rights. The distinction is one of origin rather than one of the extent of the protection afforded to the individual. "[T]he essence of both rights is fairness." (*Applebaum* v. *Board of Directors, supra* 104 Cal.App.3d 648, 657.)

In his reply brief, appellant asserts that the Health Care Quality Improvement Act of 1986 (HCQIA) (42 U.S.C. §§ 11111-11152) requires that Dr. Gill be given the right to an attorney at his peer review committee hearing. In sum, the act establishes a national clearing house of medical peer review and malpractice information and provides qualified immunity from certain federal and state laws for peer review actions taken in good faith. The act was passed in October 1986 and has an effective date of October 17, 1987. Apparently the reporting requirements are still awaiting the promulgation of reporting regulations to be issued by the Secretary of Health and Human Services.

Since the hearing and hospital's final decision in this matter occurred long before the effective date of the act, it obviously could not be applied to these proceedings. In any event, a review of the act satisfies us that it was not the intent of Congress to modify existing California peer review hearing procedures.

## III

### *Nonparticipation of Appellant in the Decision That Attorney Representation Would Not Be Allowed*

■ Appellant argues that the denial of counsel without giving him an opportunity to participate in the decision denied him a fair hearing. In the formal notice of charges and hearing, appellant was advised that he would not be represented by legal counsel.

The bylaw provision quoted *ante* at page 901 permits the board in its discretion to allow both sides to be represented by counsel.

Thus, as in *Anton v. San Antonio Community Hosp., supra,* 19 Cal.3d at page 827, the board of directors could have in its discretion permitted representation by counsel. However, no authority is cited which requires participation by either the ad hoc committee or the doctor in that decision.

In *Cipriotti v. Board of Directors, supra,* 147 Cal.App.3d at page 156, the bylaws specifically provided that a lawyer may not represent a party. The court upheld the procedure, stating in part: "So long as a fair hearing is provided, in disciplining or suspending those who do not meet its professional standards, the hospital should not be hampered by formalities not required by its bylaws nor by due process considerations. Fair hearing includes ample notice, opportunity to hear and cross-examine witnesses and to present evidence." (*Cipriotti v. Board of Directors, supra,* 147 Cal.App.3d at p. 157.)

Since appellant can be totally denied counsel, failure to permit him to participate in a decision leading to that result adds nothing to his argument that he was denied a fair hearing.

## IV

### *Adequate Substitute for Legal Counsel*

■ Under the bylaws, appellant is entitled to be "accompanied by and represented at the hearing by a member of the medical staff in good standing or by a member of his local professional society."

Appellant states he intended to call upon a Los Angeles area physician who was prepared to represent him before the ad hoc committee. When he learned he would be unable to rely upon this physician because of the bylaw provision, appellant was forced to rely on a representative from Kern County. Appellant notes this representative did little or nothing for him during the hearing. It is on this basis appellant argues the bylaw provision prejudiced him.

Appellant cites to no legal authority to support his contention the bylaw provision caused him to be inadequately represented at the hearing per se. (Cal. Rules of Court, rule 15; *Berger* v. *Godden* (1985) 163 Cal.App.3d 1113, 1119 [210 Cal.Rptr. 109].) Nor does appellant cite any practical reason why a physician from Los Angeles would have offered him better representation than one from the local area. Appellant's challenge here seems to be more focused on his displeasure with the particular representative he chose rather than on the adequacy of representation in general. Appellant was not denied a fair hearing simply because in retrospect his representative was not as aggressive as he would have preferred.

V

*Burden of Proof*

■ Appellant contends that the bylaws unfairly and improperly place the burden of proof on him to disprove the charges. He is in error. When read as a whole, the bylaws do not place the burden of proof on appellant; further, more adverse provisions have been approved by the courts.

The bylaws provide in substance that when a practitioner receives notice of a recommendation of the executive committee that will adversely affect his or her status on the medical staff, he or she is entitled to a noticed hearing in front of an ad hoc committee of the medical staff and to appellate review before the board of directors. Notice of the hearing must be sent informing the practitioner of the "acts or omissions with which the practitioner is charged, a list of specific or representative charts being questioned, and/or the other reasons or subject matter that was considered in making the adverse recommendation or decision." A member of the executive committee or other representative shall represent the executive committee "at the hearing to present the facts in support of its adverse recommendation and to examine witnesses." The bylaw continues, "It shall be the obligation of such representative to present appropriate evidence in support of the adverse recommendation or decision, but the affected practitioner shall thereafter be responsible for supporting his challenge to the adverse recommendation or decision by an appropriate showing that the charges or

grounds involved lack any factual basis or that such basis or any action based thereon is either arbitrary, unreasonable or capricious."

It is evident from the above bylaw provisions that the executive committee is responsible for not only specifying the allegations but also for first presenting evidence which factually supports those allegations. It is only after the factual basis is presented that the affected physician gets the opportunity to refute the allegations and the evidence. This procedure was followed in this case.

In *Anton* v. *San Antonio Community Hosp., supra,* 19 Cal.3d 802, 828-829, the Supreme Court upheld against a similar contention a bylaw which was clearly more unfavorable to the doctor than the bylaws in the instant case.[6] The court observed that the bylaw, read as a whole, "contemplates a substantial showing on the part of the charging committee in support of its recommendation." (*Id.* at pp. 829-830.) In light of the language of the bylaws herein more favorable to appellant than that in *Anton,* it is specious to argue that the bylaws in the instant case unfairly place the burden of proof on the appellant.

Contrary to appellant's contention, the facts of this case are not similar to those of *Pipkin* v. *Board of Supervisors* (1978) 82 Cal.App.3d 652 [147 Cal.Rptr. 502], which accepted the language of *Anton* but found the bylaws unfairly placed the burden on the person being charged. In *Pipkin* a deputy sheriff in the Shasta County jail was dismissed from her job. The Shasta County ordinance provided only for a posttermination hearing to contest the action. (*Id.* at p. 656.) The *Pipkin* court discussed the analysis in *Anton* and concluded, after conducting a review of the applicable Shasta County procedures, that, unlike the bylaw in *Anton,* the procedures were unfair. (*Id.* at p. 658.) The *Pipkin* court explained that the only affirmative duty the county counsel had to perform was to " 'prepare an order, in writing, stating specifically the cause for such an action.' " The remaining burdens of requesting a hearing and proving the charges untrue were placed on the person charged. (*Ibid.*) Unlike *Anton,* where a reading of the entire bylaw caused the court to conclude the decision had to be supported by evidence that was at least substantial, the *Pipkin* court felt the procedures in its case

[6] The bylaw at issue in *Anton* provided: " 'At any hearing involving any of the grounds for hearing specified [which include denial of reappointment and suspension of membership] . . . it shall be incumbent on the person who requested the hearing to initially come forward with evidence in support of his position. . . . [¶] In all cases in which a hearing is conducted under this Article, after all evidence has been submitted by both sides, the Judicial Review Committee shall rule against the person who requested the hearing unless it finds that said person has proved, by clear and convincing proof, that the action of the committee or body whose decision prompted the hearing was arbitrary, unreasonable, or not sustained by the evidence.' " (*Anton* v. *San Antonio Community Hosp., supra,* 19 Cal.3d at p. 828, fn. omitted.)

violated the "axiom that, 'in disciplinary administrative proceedings, the burden of proving the charges rests upon the party making the charges.'" (*Ibid.*)

 Regarding appellate review in this case, the bylaws state: "f. The Board of Directors . . . shall act as an appellate body. It shall review the record created in the proceedings, and shall consider the written statements submitted pursuant to subparagraph e of this Section 6, for the purpose of determining whether the adverse recommendation or decision against the affected practitioner was justified and was not arbitrary or capricious."

Appellant contends he was denied a fair review because the bylaws fail to state a standard of review. Any deficiency in this regard was filled in by the board's hearing officer who instructed the board to use the substantial evidence test. Specifically, he instructed the board "that you are obligated to make review of the record and determine whether there is substantial evidence that would support the decision made by the medical staff." As the trial judge concluded: "(f) The finding of the Hospital Board of Directors, whatever the standard of proof set forth in the bylaws, was properly based upon a substantial evidence test."

## VI

### *Denial of Discovery*

 Appellant contends he was denied discovery in three areas: (1) The monitor's report of Dr. Lee Richards in case No. 136165, the juvenile spleen case (hereinafter referred to as the spleen case); (2) access to all of appellant's monitor reports, as requested by letter dated March 26, and not just the ones forming the basis of the instant charges; and (3) the records on other physicians admitted to the staff of the hospital.

 No formal right to discovery exists in an administrative hearing not subject to the Administrative Procedures Act. (*Smith* v. *Vallejo General Hospital* (1985) 170 Cal.App.3d 450, 459 [216 Cal.Rptr. 189]; see also Cal. Administrative Hearing Practice (Cont.Ed.Bar 1984) Non-APA Discovery, § 2.72, p. 107.) However, it is safe to say that "fair procedure" requires disclosure of all evidence forming the basis of the charges and any other evidence which is made available to the hearing panel. (*Hackenthal* v. *California Medical Assn.* (1982) 138 Cal.App.3d 435, 444 [187 Cal.Rptr. 811].)

As to (3), there is no citation to the record supporting the request or to any response that the hospital may have made to the request, if any. We

therefore will not consider this point. (*Smith* v. *Vallejo General Hospital, supra,* 170 Cal.App.3d 450, 459.)

███ As to (1), the trial court found: "(a) Petitioner should have been allowed discovery of, and introduction of the monitor report of Dr. Lee Richards, who attended the surgery in that matter [referring to the spleen matter]." And that, "(h) With the exception of the discovery issue dealt with regarding the aforementioned spleen case, petitioner was afforded ample discovery to effectively represent his interests at the hearing conducted by respondent."

The court then stated that the decision of the board was supported by substantial evidence, even though it disregarded the evidence regarding the spleen case.

We agree with the trial court that the heretofore recited evidence was sufficient to support the hospital's order. Though appellant may have been denied access to that monitor report, he suffered no prejudice as a result of the omission. The spleen case was presented as evidence to support the charge appellant showed poor medical judgment. The focus of the presentation concerned appellant's actions prior to surgery and whether too much time was taken in making the decision to proceed with surgery. Therefore, a monitor's report covering appellant's performance during surgery would not address the primary concerns involved in this case. We have no real doubt that the result reached by the ad hoc committee and the executive board would have been the same even though the evidence regarding the spleen case had not been before them. (*Miller* v. *Eisenhower Medical Center* (1980) 27 Cal.3d 614, 635 [166 Cal.Rptr. 826, 614 P.2d 258].)

As to (2), *ante,* the record is entirely unclear as to whether any of this information was supplied. Assuming it was not, we agree with the trial court that discovery of all of appellant's monitor reports, even though not a basis for any of the charges in this case, was not required by the fair hearing doctrine. The purpose of the ad hoc committee hearing was to resolve "on an intra-professional basis, matters bearing on professional competency and conduct." Appellant's competency and conduct were challenged in numerous cases. The hearing was meant to explore these charges and determine whether the charges as to those specific cases met the professional standards expected of physicians with full privileges. The exploration of cases not involved in the specific charges would have had only a tangential relation to the specific charges and would have extended the hearings into collateral matters. The committee had the discretion to deny discovery of these reports.

## VII

### *Prevention of Cross-examination*

██ Appellant contends that none of the witnesses who testified on behalf of the medical staff was cross-examined and that he was denied the opportunity to do so. These assertions inaccurately represent the record and are without merit.

Initially it is noted that the bylaws provide for the right to cross-examine.

"i. The affected practitioner shall have the following rights: to call and examine witnesses, to introduce written evidence, to cross-examine any witnesses or any matter relevant to the issue of the hearing, to challenge any witnesses and to rebut any evidence. . . ."

There is no indication in the record of the hearing that appellant was ever told he could not cross-examine the witnesses presented on behalf of the medical staff. In fact, appellant actually did ask questions of a number of witnesses who appeared on behalf of the medical staff. Furthermore, at numerous points during the hearing the chairman asked everyone if they had any further questions of the witnesses. The record does not support the conclusion this meant everyone but appellant.

Appellant seems to be basing his contentions on the fact that throughout the presentation of the monitors' reports he continually asked for the opportunity to present rebuttal evidence. Appellant was repeatedly told he would get this opportunity after all the reports were presented. This did not involve the right to cross-examination, but instead dealt with the order of proof.

## VIII

### *Introduction of Hearsay Evidence*

██ The hearsay evidence being challenged consists of a memorandum prepared by Sister Phyllis Hughes on the same day she was visited by the mother of the juvenile in the spleen case. The memorandum, as read at the hearing, provided as follows: "Mrs. Bradley visited me today, date is October 24, 1985, to ask what was going on, because Dr. Gill keeps asking her to write a letter to the hospital, with a copy to him, stating that her son's surgery was delayed at her request. Mrs. Bradley told me that she was advised by the doctor to wait on the surgery to quote see if the bleeding would stop close quote. Therefore, she does not want to write a letter. She

also is feeling very pressured by Dr. Gill's repeated insistence. I told Mrs. Bradley that I felt such a letter was unnecessary. I explained that the medical staff has a routine peer review process, during which they ask questions of one another about aspects of cases. This was probably the reason for the doctor's request." This memorandum was introduced into evidence.

Although uncorroborated hearsay evidence cannot, by itself, support an administrative finding, hearsay evidence together with other reliable evidence may support a finding. (*Cipriotti* v. *Board of Directors, supra,* 147 Cal.App.3d 144, 155, fn. 2.) In fact, the hospital bylaws make no reference to the admissibility of hearsay and state instead: "The hearing need not be conducted strictly according to the rules of law relating to the examination of witnesses or presentation of evidence. Any relevant matter upon which responsible persons customarily rely in the conduct of serious affairs shall be considered, regardless of the existence of any common law or statutory rule which might make evidence inadmissible over objection in civil or criminal action. The practitioner for whom the hearing is being held shall, prior to or during the hearing, be entitled to submit memoranda concerning any issue of procedure or of fact and such memoranda shall become a part of the hearing record." Although the memorandum is clearly hearsay evidence, it is not unreliable evidence. It appears the memorandum was prepared shortly after Sister Hughes's conversation with the mother while the information therein was fresh. This makes the memorandum a more accurate statement of what occurred during that conversation than an unrefreshed oral recollection some months after the actual conversation.

Furthermore, there was other substantial evidence on the issue of appellant's medical judgment. The other evidence presented at the hearing adequately supports the finding appellant's medical judgment did not meet the standards required for unmonitored status on the medical staff.

Interestingly, appellant introduced at the hearing on appeal before the board a hearsay letter from Robert Pereyra, M.D., addressing in detail the various monitor reports which had been presented to the ad hoc committee.

## IX

*Bias of Dr. Ramon Neufeld, Chairman of the Ad Hoc Committee*

 Contending Dr. Neufeld continually took the role of adversary instead of impartial factfinder, appellant alleges Dr. Neufeld was biased and that this bias deprived him of a fair hearing. To support this claim appellant cites numerous episodes that occurred during the ad hoc committee

hearing. Specifically, appellant asserts Dr. Neufeld prevented him from cross-examining the witness (dealt with in issue VII), interrupted him repeatedly, and caused him to rush through his rebuttal evidence. While appellant makes some conclusional arguments in this regard grounded on excerpts from remarks taken out of context, the record as a whole does not support the charge of bias. On the contrary, it supports the view that Dr. Neufeld acted as a neutral facilitator of the proceedings.

In *Andrews* v. *Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781 [171 Cal.Rptr. 590, 623 P.2d 151], the Supreme Court set forth the standard for determining whether bias of a hearing officer constitutes a sufficient basis for disqualification.

" 'In order for the judge to be disqualified, the prejudice must be against a particular party [citations] *and* sufficient to impair the judge's impartiality so that it appears probable that a fair trial cannot be held.' (Italics added.)" (*Id.* at p. 792.)

In reviewing the evidence, it must be remembered the evidence of bias must be "concrete" rather than frivolous or conclusional. (*Ibid.*) " 'Bias and prejudice are never implied and must be established by clear averments.' " (*Ibid.*) Furthermore, the mere appearance of bias is not sufficient. (*Id.* at p. 793.)

The record does not establish that Dr. Neufeld was biased in his approach to the case or in his attitude toward or treatment of appellant.

## X

*Presence of Sister Phyllis Hughes, President of the Hospital, at the Ad Hoc Hearing*

Appellant next challenges the presence of Sister Hughes during the ad hoc committee's proceedings. Appellant argues it was error to "have anyone who is biased or prejudiced on the body . . . especially someone who has considerable power . . . sit and watch the deliberations."

Appellant's assertions regarding Sister Hughes lack any foundation. The record offers absolutely no support for the conclusion Sister Hughes had any bias against appellant. Furthermore, there is no basis for concluding Sister Hughes had any influence over the final decision of the ad hoc committee. During some recorded discussions following the board of directors' meeting, appellant's attorney asked the attorney for the Mercy Hospital Medical Executive Committee whether Sister Hughes sat in on the ad hoc

committee's deliberations. Following a break, the attorney for the hospital responded as follows: "MR. JOHNSON: I am advised by Sister Phyllis that she was requested by the ad hoc committee hearing to be present during the deliberations and was, in fact, present during the deliberations. I asked her if questions were asked of her and she indicated there were some questions asked of her, primarily in two categories: one, there was a question asked of her concerning a procedure at another hospital and she indicated that she did not think it was appropriate to go into that and declined to give any answer. The other questions that were asked of her she characterized as all being procedural type questions relating to the By-laws and the process of what were the mechanics to be. She indicates that at no time was she asked any question or did she volunteer any information concerning the merits of the issues presented to that committee." Appellant has failed to provide any evidence indicating Sister Hughes offered more than information on procedure during deliberations or that she was biased against appellant or unduly influenced the ad hoc committee's deliberations.

## XI

### *Denial of Equal Protection by Application of Code of Civil Procedure Section 1094.5 Standard of Review*

 Appellant asserts he was denied equal protection of the law by application of the substantial evidence test set forth in Code of Civil Procedure section 1094.5, subdivision (d), which states in pertinent part: "(d) Notwithstanding subdivision (c), in cases arising from private hospital boards or boards of directors of districts organized pursuant to The Local Hospital District Law, Division 23 (commencing with Section 32000) of the Health and Safety Code, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record."

Following the express provisions of the section, the trial court, in denying mandate, applied the substantial evidence test.

Appellant argues that since there are public hospitals in large urban areas which are not "organized pursuant to the local hospital district law, division 23 (commencing with section 32000) of the Health and Safety Code," he has been denied equal protection because a doctor seeking membership on the staff of such a hospital is entitled to have a trial court examine the record and exercise its independent judgment in reviewing the administrative decision of the hospital. (See Code Civ. Proc., § 1094.5, subd. (c).)

This issue has been thoroughly discussed and decided adverse to appellant's contentions in *Anton II (Anton* v. *San Antonio Community Hospital*

(1982) 132 Cal.App.3d 638, 650-657 [183 Cal.Rptr. 423], per Kaufman, J. [now a member of the Supreme Court of California]). We see no point in engaging in further discussion of the issue and choose to follow *Anton II*.[7]

The judgment is affirmed.

Woolpert, Acting P. J., and Hamlin, J., concurred.

A petition for a rehearing was denied March 25, 1988, and appellant's petition for review by the Supreme Court was denied May 18, 1988.

---

[7] It is true that as of the time of the *Anton II* decision the statute provided in relevant part: ". . . in cases arising from private hospital boards, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (*Anton II,* at p. 645.) Thus, the court's due process and equal protection discussion dealt with all private hospitals, vis-à-vis all public hospitals. The fact the statute was amended in 1982 to lump local district hospitals in the same category as private hospitals but left at large a class of public hospitals subject to the independent judgment test does not, in our opinion, impair the validity of the court's reasoning in rejecting the constitutional attack on the statute.