[No. E006933. Fourth Dist., Div. Two. Nov. 29, 1990.]

SIDNEY E. SUMMERS, Plaintiff and Appellant, v.
CITY OF CATHEDRAL CITY et al., Defendants and Appellants.

1050

COUNSEL

John E. Fitzgerald III and Morton Gollin for Plaintiff and Appellant.

Martin J. Mayer and Irving Berger for Defendants and Appellants.

OPINION

**HOLLENHORST, Acting P. J.—**

### INTRODUCTION

A former municipal employee brought an action for wrongful termination. After the trial court granted the motion of the City of Cathedral City

(City) for summary judgment,[1] the City moved for an award of sanctions pursuant to Code of Civil Procedure section 128.5.[2] That motion was denied.

The employee (plaintiff) appeals from the judgment in favor of the City. The City cross-appeals from the denial of its motion for sanctions. The City also requests an award of damages pursuant to section 907, on the grounds that plaintiff's appeal is frivolous.

We affirm the summary judgment, finding that each of the four principal arguments raised by the City is a complete legal defense to one or more of plaintiff's four causes of action. We also affirm the order denying the City's motion under section 128.5, finding that the record does not indicate that the trial court abused its discretion in failing to award sanctions. Finally, we impose sanctions against plaintiff's counsel for prosecuting a frivolous appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed: Plaintiff was hired by the City in 1983, and by December of 1984 had risen to become the director of the City's department of building and safety. On September 30, 1986, in a meeting with the city manager and the head of the City's department of community development, plaintiff was told that he was terminated (hereinafter, the first termination), and was handed a check for all salary and vacation pay accrued by him through that date.

At the time of this purported termination, plaintiff was a regular, nonprobationary employee, and thus was entitled to notice and the right to respond prior to any termination of his employment, and to an evidentiary hearing subsequent to such a termination. Nevertheless, this announcement was without warning or prior notice.

In a written appeal, filed with the City's city council (Council) on October 7, 1986, plaintiff asserted that the summary termination had denied him his right to due process, and requested both reinstatement and, if necessary, a hearing. A hearing before the Council was set for a date in November 1986, but was subsequently postponed to sometime in December 1986.

On December 17, 1986, no hearing having been conducted, plaintiff filed a written claim with the City, as the required preliminary step to an action

---

[1] The motion was also brought on behalf of the four individual defendants: the city manager, plaintiff's immediate supervisor, and two other employees. For convenience, we refer to all defendants collectively as the City.

[2] All references to sections are to the Code of Civil Procedure unless otherwise specified.

against a governmental entity. (Gov. Code, § 945.4.) The next day, December 18, the City sent plaintiff a letter which stated that, due to an administrative error in the manner in which he had been terminated in September, he was being reinstated as director. Enclosed with the letter were checks for the wages which plaintiff had accrued since the date of that first termination.

The letter was entitled "Notice of Proposed Disciplinary Action," and further advised plaintiff that, despite his reinstatement, it was still the City's intention to terminate him. Accordingly, the letter advised plaintiff of the charges against him, transmitted to him 177 pages of documentation upon which the charges were based, and invited plaintiff to respond to those charges, either orally or in writing, to the city manager by January 5, 1987. In the meantime, plaintiff was placed on administrative leave, with pay.

Plaintiff received the letter, negotiated the checks, and on January 3, 1987, requested, in writing, that the City grant him an additional 35 days in which to prepare his response. The City thereupon extended the deadline to January 12. When that date passed without plaintiff either requesting an oral conference or submitting a written response to the charges, the City warned plaintiff that he would be terminated on January 19 unless he notified the City that he desired the opportunity to respond to the charges prior to the imposition of discipline.

To accommodate settlement negotiations, that deadline was again extended to February 25. On February 23, plaintiff demanded a hearing before the Council to appeal the *first* termination, but made no response to the charges upon which the City was relying to justify the impending *second* termination. Accordingly, on March 5, 1987, the City sent a notice of termination to plaintiff, stating that since he had not responded to the charges against him, he had been terminated on February 25 (second termination). The letter included a check for all salary accrued through February 25, as well as notice of his right to appeal the second termination to the Council. Noting that plaintiff had already requested a hearing (in the February 23 letter, concerning the first termination), the letter concluded by promising that a date for an appeal hearing would be arranged shortly.

The Council heard the matter on April 13, 1987. Plaintiff, through his attorney, expressly declined to address the charges against him which had resulted in the second termination. Instead, he argued: that the first termination had been in bad faith and without due process; that his reinstatement was a "sham" because it had been coupled with notice of the City's intent to terminate him a second time, and thus had not cured the wrongful first

termination; and that the charges against him were "trumped up" after the fact.

The Council, in written findings of fact and conclusions of law adopted June 17, 1987, addressed both the first and second terminations by determining: that the first termination had been "null and void," and had been "resolved" by the reinstatement of plaintiff with backpay; that the City had complied with the procedural requirements of *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774] in processing the second termination; that plaintiff had failed and refused to present any evidence to rebut the charges against him; that the charges had been substantiated; and that the second termination of plaintiff should be upheld. The decision also warned plaintiff that any judicial review of that decision must be initiated by filing a petition for a writ of mandate within 90 days of the date upon which the decision became final.

Plaintiff did not seek judicial review of the Council's decision by filing a petition for writ of mandate pursuant to section 1094.5; however, on March 31, 1987, two weeks *before* the hearing in front of the Council, he filed the instant action for wrongful termination.

Following numerous demurrers and the filing of the plaintiff's third amended complaint, the City moved for summary judgment on January 3, 1989. Plaintiff filed his own summary judgment motion on January 27, 1989. Both motions were heard on March 10, 1989, at which time the City's motion was granted, and plaintiff's motion was ordered off calendar as moot.

Ten days later, and before any judgment had been entered pursuant to the ruling on the summary judgment motion, plaintiff moved for reconsideration. Soon thereafter, the City moved for an award of sanctions pursuant to section 128.5, on the grounds that plaintiff's entire action had been "totally and completely without merit." Plaintiff retaliated with his own motion for sanctions, in which he contended that the City's motion was frivolous. In its responses to plaintiff's two motions, the City requested sanctions pursuant to section 447, to compensate it for the cost of preparing those oppositions.

The trial court denied the motion for reconsideration and the reciprocal motions for 128.5 sanctions, but did impose sanctions against plaintiff, pursuant to section 447, in the sum of $500 for both of his motions, for a total of $1,000.

## Discussion

### A. Motion for Summary Judgment

#### 1. *Standard of Review*

"The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).)

■ When, as is the case here, a defendant is the moving party, it "is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail." (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) Thus, we must examine the record "to determine whether the defendant has conclusively established facts eliminating the liability pleaded against him, or whether plaintiffs have by their declarations of fact raised the existence of a triable issue of fact concerning the bar to liability asserted by defendant." (*Brandlin* v. *Belcher* (1977) 67 Cal.App.3d 997, 999 [134 Cal.Rptr. 1].)

The first step, therefore, is to identify the nature of the causes of action which the plaintiff asserts against the City.

#### 2. *Third Amended Complaint*

Plaintiff's third amended complaint, to the extent that it survived the City's final demurrer, is pleaded as four separate causes of action: the first, third, fourth, and fifth.[3] The first, entitled simply "Wrongful Termination," appears to allege that his employment by the City was governed by an implied-in-fact contract to the effect that "his employment would not be terminated without prior notice, a right to a hearing and good cause," and that the first termination breached that agreement.[4] The third, entitled

---

[3] The demurrer had been sustained without leave to amend as to the second cause of action, for breach of the implied covenant of good faith and fair dealing, and the sixth cause of action, for defamation. In his briefs, plaintiff does not assert any error in this ruling; therefore, any error which may exist is deemed waived. (*Wheeling* v. *Financial Indemnity Co.* (1962) 201 Cal.App.2d 36, 44-45 [19 Cal.Rptr. 879].

[4] At first glance, our characterization of this cause of action would appear to be contrary to plaintiff's own representation to the trial court that "PLAINTIFF'S ACTION FOR WRONGFUL TERMINATION [IS] NOT BASED ON A CONTRACT THEORY." Similarly, in his reply brief to this court, plaintiff warns that the characterization of his claims as being "based in whole or in part on theories of breach of contract or breach of [the] implied covenant of good faith and fair dealing" would "misdirect and mislead the Appellate court . . . ." Nevertheless, it

"Tortious Denial of Administrative Due Process," alleges that the first termination violated the City's own rules, that the reinstatement was a farce, and that the first termination and the failure to conduct a hearing prior to the filing of plaintiff's claim constituted a denial of his due process rights. The fourth and fifth causes of action, entitled "Intentional Infliction of Emotional Distress" and "Negligent Infliction of Emotional Distress," respectively, allege that plaintiff had suffered emotional distress as a result of the first termination. All seek monetary damages.

### 3. *Contentions*

Plaintiff contends that there are several issues of disputed material fact, variously stated as: "just cause, due process and exhaustion of administrative remedies;" "whether the facts of the September 30, 1986[,] termination constituted wrongful discharge; whether 'just cause' was present; whether [plaintiff] was given the due process required, and related damage issues;" and "the true reasons for [plaintiff's] dismissal, and whether they show bad faith rather than dissatisfaction with services and reflect intentions to deprive the employee of the benefits of the contract."[5] The City, on the other hand, claimed in its opposition to plaintiff's summary judgment motion that "there are no material disputed fact issues in this case. While the parties sharply disagree on the legal significance of the facts, they are in agreement that the issues are of law alone . . . ."

While the City is obviously mistaken concerning the existence of an agreement on this issue, our review of the record indicates that the City is otherwise correct: there are no disputed issues of material fact. The parties do not materially disagree on what did or did not happen, but only on what the legal consequences of those occurrences are.

Plaintiff's central contention on appeal is that a classified employee has an actionable claim for damages, despite a subsequent reinstatement with backpay, if a public entity (1) terminates the employee without according him the pretermination procedural rights guaranteed by *Skelly*, and then (2) fails to conduct a hearing to consider the employee's appeal of that

---

appears that plaintiff intended that his disclaimer apply only to express contracts, as opposed to contracts implied-in-fact, since he repeatedly cites cases concerning the latter.

[5] It should be noted that plaintiff asserts the existence of these disputed issues of fact without citing to the evidence in the record which allegedly demonstrates that existence. Indeed, the six-page statement of facts in plaintiff's opening brief is devoid of any citations to the record. Instead, that statement is prefaced as follows: "The facts as described *infra* have been established during a review of Summers' termination circumstances by Cathedral City Council on April 13, 1987 (R. pp. 977-1080)." This utter disregard for the requirement in California Rules of Court, rule 15(a), that "[t]he statement of any matter in the record shall be supported by appropriate reference to the record," is inexcusable.

termination, or reinstate the employee, until *after* the employee has filed a governmental tort claim against the public entity to recover damages for the improper termination. Under these facts, plaintiff contends, the errors made by the public employer cannot be corrected by reinstatement, and the employee is entitled to monetary damages for wrongful termination and emotional distress.

We find that the numerous legal defenses raised by the City are meritorious, and that summary judgment was properly entered. Several of the defenses, by themselves, dispose of all of plaintiff's causes of action, and thus would be sufficient to affirm the judgment; however, because of the City's contention that plaintiff's appeal is frivolous, we will evaluate each of them.

### 4. *Reinstatement*

The cornerstone of the City's defense is its assertion that, by voluntarily reinstating plaintiff following the admittedly defective first termination, and by paying him all wages due between the date of termination and the date of reinstatement, it has corrected its error by giving plaintiff all the relief which the law affords to him. Since the law recognizes no injury, plaintiff has no action.

In response, plaintiff does not challenge the premise that reinstatement with pay was the only remedy available to him, but instead argues that the reinstatement did not have the curative effect claimed by the City because he was not reinstated until after he commenced the prosecution of an action against the City by filing a governmental tort claim, and because the City reinstated him with the express purpose of starting the termination procedures all over again. Plaintiff characterizes the reinstatement and second termination as "ex post facto, post-litigation conduct" which should not be permitted to deny him his right "to seek redress in the courts."

As will be seen, we conclude that the City is correct, and that the distinctions which plaintiff seeks to draw are inconsequential.

### a. *Tort Remedies*

 All four of plaintiff's causes of action are founded upon the same act: the City's allegedly wrongful termination of his employment. No cause of action exists unless that termination, if proven to be wrongful, will entitle him to recover damages over and above the thousands of dollars of backpay which he accepted upon his reinstatement. Plaintiff fails to explain the theory under which such additional damages would be forthcoming.

In *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373], the Supreme Court described three theories under which a wrongful termination action may be brought: an action in tort for a discharge in contravention of public policy; a contract action for a discharge in breach of an express or implied-in-fact employment agreement; and an action for breach of the implied-in-law covenant of good faith and fair dealing. The primary issue was whether a breach of the implied covenant entitled a plaintiff to the recovery of tort damages, or whether he was limited to traditional contract remedies.

In deciding against the extension of tort remedies, the court characterized tort actions as ones to enforce some general duty to society which the law imposes upon a party without regard to its contractual obligations. An action to enforce the implied covenant of good faith and fair dealing, on the other hand, is a contract action, i.e., one involving "an allegation of breach of an 'ex contractu' obligation, namely one arising out of the contract itself." (47 Cal.3d at pp. 689-690.) Accordingly, it held that "contractual remedies should remain the sole available relief for breach of the implied covenant of good faith and fair dealing in the employment context." (*Id.* at p. 696.) Further, *Foley* reminded us that those contractual remedies are measured by "the benefits of the agreement that [the employer and employee] entered into." (*Id.* at p. 699, fn. 41.) The scope of those remedies is not affected by the motive of the breaching party. (*Id.* at p. 699.)

Thus, a plaintiff may recover tort damages for wrongful termination only if the discharge was in contravention of public policy. Here, plaintiff has neither alleged nor offered evidence to show that the City discharged him " 'for reasons violative of fundamental principles of public policy . . . .' " (47 Cal.3d at p. 667, quoting from *Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1166 [226 Cal.Rptr. 820].) Therefore, he is restricted to contract damages, and his three tort causes of action (the third, for tortious denial of due process, and the fourth and fifth, for emotional distress) must fail.

### b. *Contract Remedies*

■ To evaluate plaintiff's potential contract damages, we examine the alleged contract with the City to determine what benefits have been promised to him. While it certainly promised that he would receive wages for his services, all such wages appear to have been paid to him. Plaintiff does not claim that the checks which accompanied the reinstatement notice failed to compensate him for the wages which had accrued since the first termination.

Plaintiff does claim, however, that the implied agreement provided that he would not be terminated without prior notice, without a pretermination hearing, or without good cause. There is no dispute the first termination was accomplished without either notice or hearing. Nevertheless, the law does not recognize the denial of such procedural rights as an injury which is separately compensable from the failure to pay wages.

It is well established that when an employee has been discharged without the benefit of advance notice and the opportunity to respond, the employee's "damages consist only of back pay for the period discipline was improperly imposed . . . ." (*Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 402 [134 Cal.Rptr. 206, 556 P.2d 306]; *Kirkpatrick* v. *Civil Service Com.* (1978) 77 Cal.App.3d 940, 945 [144 Cal.Rptr. 51]; *Pipkin* v. *Board of Supervisors* (1978) 82 Cal.App.3d 652, 657 [147 Cal.Rptr. 502].) Here, plaintiff received backpay from the date of the first termination to the date of reinstatement. Since that is the exclusive remedy for whatever injury may have resulted from the City's procedurally improper first termination, and since that remedy has already been paid to plaintiff, plaintiff has no injury to redress.

Plaintiff presents neither authority disputing this conclusion, nor evidence of injury suffered by him for which he was not compensated by the backpay. Instead, he contends that the rule should not apply because the reinstatement with pay did not occur until after the City was prompted to act by the filing of his governmental tort claim. However, plaintiff offers no authority to establish that the law *now* recognizes this distinction, nor does he identify any public policy or other reason why the law *should* recognize such a distinction. We see no reason to adopt such a rule ourselves; to the contrary, one of the primary purposes of the claims statute is to enable the governmental entity "to correct the conditions or practices which gave rise to the [injury complained of in the] claim." (Recommendations Relating to Sovereign Immunity, 4 Cal. Law Revision Com. Rep. (1963) pp. 1001, 1008; *Bozaich* v. *State of California* (1973) 32 Cal.App.3d 688, 697 [108 Cal.Rptr. 392].) The adoption of a rule that the filing of a claim prevents the government from correcting procedural errors made during termination proceedings would be antithetical to that goal.

Plaintiff's second proposed distinction is that an employee should not be limited to backpay when the public agency reinstates him with the express purpose of reterminating him. Once again, this contention is supported by neither authority nor reasoned argument.[6] There is no reason why a city

---

[6] While both the federal and state Constitutions protect a criminal defendant from being "twice put in jeopardy" for the same offense (U.S. Const., 5th Amend.; Cal. Const., art. I,

should be prevented from terminating an employee merely because its first attempt to do so was procedurally defective. Cases such as *Barber* v. *State Personnel Bd.*, *supra*, explicitly recognize that procedurally inadequate terminations can be "validated" and "corrected" after the fact. (18 Cal.3d at pp. 402-403.) Indeed, in *Kirkpatrick* v. *Civil Service Com.*, *supra*, the court held that an employee need not be reinstated for any period at all, so long as the employee is paid until the proper procedures are followed. (77 Cal.App.3d at p. 945.)

In summary, since plaintiff had already received the only remedy recognized by the law for the injury he had suffered, it is clear that the summary judgment was properly granted as to all four causes of action.

### 5. *Failure to Seek Judicial Review of the Council's Decision*

■ As noted above, plaintiff never sought to have the decision of the Council judicially reviewed by bringing a petition for a writ of administrative mandamus pursuant to section 1094.5.[7] The City argues: that plaintiff was required to exhaust his administrative remedies before bringing an action at law; that a petition for a writ of mandate was an administrative remedy available to him; and that his failure to pursue that remedy is fatal to plaintiff's lawsuit. Alternatively, the City contends that plaintiff's failure to seek such judicial review means that plaintiff is collaterally estopped from contesting any of the findings of the Council.

Nearly 40 years ago, the Supreme Court decided that mandamus proceedings are the proper avenue for contesting decisions regarding public employee discipline: "Plaintiff seeks to annul an order of defendant State Personnel Board dismissing him from his civil service position and also seeks a judgment awarding him the salary accruing thereto from the date of his suspension. For this relief, an ordinary civil action is inappropriate. [Citation.] [¶] Since the enactment of section 1094.5 of the Code of Civil Procedure, it is no longer open to question that in this state the writ of mandamus is appropriate 'for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer . . . .' [¶] The proceedings of the State Personnel Board in connection with plaintiff's dismissal were clearly

---

§ 15), there is no comparable protection from double jeopardy in the field of employment terminations.

[7] Plaintiff's failure to pursue that remedy does not appear to be the result of ignorance of its existence. He was reminded of its availability both at the conclusion of the hearing before the Council, and in the formal findings which resulted from that hearing.

of the type envisioned by section 1094.5 [citation] and the writ of mandamus will therefore lie to review the board's decision." (*Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 637 [234 P.2d 981].)

Not only is a writ of mandate an appropriate means of reviewing an administrative decision, such a review is, under certain circumstances, a prerequisite to an action for the recovery of damages allegedly resulting from that decision. For instance, in *Logan* v. *Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116 [185 Cal.Rptr. 878], a discharged governmental employee brought an action against the district for, inter alia, breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress, based upon a discharge which allegedly deprived him of due process. The court held that those causes of action for damages "fail because he did not apply for a judicial review of the decision and findings of the administrative agency here involved pursuant to section 1094.5, which application amounts to a condition precedent to his filing a complaint for damages." (*Id.* at p. 124.)

The same conclusion was reached under similar facts in *City of Fresno* v. *Superior Court* (1987) 188 Cal.App.3d 1484 [234 Cal.Rptr. 136], review denied. There, an employee brought an action for damages for his discharge, without first challenging a personnel board's decision upholding that discharge. The court held that since the plaintiff's action was premised upon an assertion that the board's decision was erroneous or unjustified, his action was premature until he had overturned that decision through the medium of a writ of administrative mandamus. (*Id.* at pp. 1489-1490.) Accordingly, it issued a writ of mandate, instructing the trial court to grant the city's motion for summary judgment and dismiss the action.

While *City of Fresno* and *Logan* speak in terms of a petition for writ of administrative mandamus being an administrative remedy which must be exhausted, a more recent case has observed, we think correctly, that the doctrine being applied is really one of collateral estoppel, or issue preclusion. "[T]he *judicial* review of an agency determination can in no way be considered part of the *administrative* process which must be exhausted before a subsequent judicial action may commence. [¶] What defendants are really asserting is that plaintiff is barred because he failed to exhaust his *judicial* remedies." (*Knickerbocker* v. *City of Stockton* (1988) 199 Cal.App.3d 235, 240 [244 Cal.Rptr. 764].) Judicial review of an administrative decision can occur only "in an administrative mandamus proceeding and not in a lawsuit for damages." (*Id.* at p. 244.) If a plaintiff fails to seek such judicial review, he "is bound by the [administrative] determination and to the extent that his causes of action are inconsistent with that determination, they are fatally flawed." (*Ibid.*)

Here, the Council determined that the defective first termination had been "properly resolved by his reinstatement and by the awarding of back pay;" that the procedures followed in the second termination were proper; and that the charges of misconduct against plaintiff had been "substantiated." These findings are inconsistent with plaintiff's four causes of action. Therefore, plaintiff was required, as a precondition to the prosecution of his damage action, to proceed via section 1094.5 to challenge and overturn the Council's decision upholding his termination. Having failed to do so, he cannot complain of the dismissal of his action.

Plaintiff's attempts to avoid this result are without merit. First, alluding to the multiple demurrers in which the City unsuccessfully raised plaintiff's failure to challenge the Council's determination under section 1094.5, he argues that this issue "had previously been litigated thoroughly at various law and motion hearings and resolved in [plaintiff's] favor." It should go without saying that a ruling which erroneously overrules a demurrer is not binding on anyone. The objection may be raised again by the defendants, and the error may be corrected by the same or some different law and motion judge, by the trial judge, or by the appellate court. (*Ion Equipment Corp.* v. *Nelson* (1980) 110 Cal.App.3d 868, 877 [168 Cal.Rptr. 361].)[8] Therefore, the rulings on the demurrers, while unfortunate, did not "resolve" anything.

Plaintiff next argues that exhaustion of administrative remedies is excused when to do so would have been futile, citing *Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830 [112 Cal. Rptr 761]. That case holds that a claimant is excused from exhausting its administrative remedies when it can positively show that any further administrative appeal would have been unsuccessful.

That rule has no applicability here. As discussed above, the plaintiff's claims are barred, not because of his failure to exhaust his administrative remedies, but because of his failure to pursue the judicial remedies available to him, i.e., to petition the superior court for a writ of mandate. An independent judicial review of the administrative proceedings would only be futile if the attack on the administrative determination were meritless. That the claim is without merit is no reason to exempt it from the bar of collater-

---

[8] The discussion in *Ion Equipment* on this issue was quoted in full in the City's summary judgment motion. Despite this reminder of the applicable rule, and without making any effort to distinguish it, plaintiff spends a full page in his opening brief, and two full pages in his reply brief, quoting from the minute orders overruling the demurrers, and insisting that the "trial judge apparently lost sight of these realities" when he declined to follow those prior rulings. Given his apparent inability or unwillingness to abandon his contention that those rulings are binding even after that proposition had been demonstrated to be utterly without merit, it is clear that it is plaintiff, rather than the trial court, who has lost sight of reality.

al estoppel. Plaintiff's reliance upon the doctrine of futility, therefore, is entirely misplaced.

In summary, when the Council's determinations went unchallenged by mandamus proceedings, they became final, and thus collaterally estopped plaintiff from relitigating the validity of the hearing or its adjudications. Since two of those adjudications (i.e., that the first termination had been cured by the reinstatement with pay, and that the second termination was procedurally correct and for good cause) contradicted essential allegations upon which plaintiff's causes of action rely, summary judgment was properly entered as to all four causes of action.

### 6. *Governmental Immunity*

■ Even assuming that the remedies for a faulty termination are not limited to reinstatement with backpay, the City argues that it is statutorily immune from tort liability for any injuries allegedly suffered by the plaintiff. Although this argument was asserted both in the trial court and in the City's brief before us, plaintiff does not address the issue at all.

In *Kemmerer* v. *County of Fresno* (1988) 200 Cal.App.3d 1426 [246 Cal.Rptr. 609], a discharged employee brought suit against the county and its employees for, inter alia, damages for emotional distress, arising out of the plaintiff's termination. In affirming a judgment of dismissal following an order sustaining a demurrer without leave to amend, the appellate court held after a long and detailed discussion that the individual defendants were immune from liability by virtue of Government Code sections 821.6[9] and 820.2,[10] and that, since its employees were immune, the county was also immune by virtue of Government Code section 815.2, subdivision (b)[11] (*Kemmerer, supra,* at pp. 1435-1439.)

The facts in *Kemmerer* are indistinguishable from those presented by plaintiff here. Accordingly, all defendants are immune from any tort liability for their actions in connection with the termination of plaintiff, and the

---

[9] Government Code section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

[10] Government Code section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

[11] Subdivision (b) of Government Code section 815.2 provides: "(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

summary judgment was properly granted as to the three causes of action asserting such liability, i.e., the third, fourth, and fifth.

### 7. *Wrongful Termination Inapplicable*

■ As discussed above, there are three theories of recovery for a wrongful termination: for a tortious termination in contravention of public policy; for breach of an express or implied-in-fact contract; and for breach of the implied covenant of good faith and fair dealing. (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654; *Koehrer* v. *Superior Court, supra,* 181 Cal.App.3d 1155.) Plaintiff's causes of action do not fall within any of these theories, and thus summary judgment was properly granted for this reason as well.

As previously noted, plaintiff's attempt to plead a cause of action for breach of the implied covenant in his second cause of action was rejected in the ruling on the demurrer to the third amended complaint, to which he assigns no error. Similarly, the third cause of action, although entitled "tortious denial of administrative due process," does not allege that plaintiff was terminated " 'for reasons violative of fundamental principles of public policy' " (*Foley, supra,* 47 Cal.3d at p. 667; *Koehrer, supra,* 181 Cal.App.3d at p. 1166), and thus does not qualify as a tortious termination.

The only remaining possible theory, therefore, is the contractual basis, upon which plaintiff relies. This theory also fails to sustain plaintiff's action, however, since there is no contractual right to the continuation of public employment.

"[I]t is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law." (*Miller* v. *State of California* (1977) 18 Cal.3d 808, 813 [135 Cal.Rptr. 386, 557 P.2d 970].) This rule applies at all levels of government: state (*ibid.*); county (*Kemmerer* v. *County of Fresno, supra,* 200 Cal.App.3d at pp. 1432-1433); charter city (*Butterworth* v. *Boyd* (1938) 12 Cal.2d 140, 150 [82 P.2d 434, 126 A.L.R. 838]); or special district (*Humbert* v. *Castro Valley County Fire Protection Dist.* (1963) 214 Cal.App.2d 1, 13 [29 Cal.Rptr. 158]). It applies as well to the civil service employees of the City of Cathedral City.

Thus, as a matter of law, there can be no express or implied-in-fact contract between plaintiff and the City which restricts the manner or reasons for termination of his employment. His only ground for complaint can be that the City violated its own laws when it terminated him. (Cf. *Read* v.

*City of Lynwood* (1985) 173 Cal.App.3d 437, 443 [219 Cal.Rptr. 26].[12]) While plaintiff has alleged such a violation, he does so only with respect to the first termination. Since the first termination was resolved by reinstatement with back pay, any such violation is irrelevant. Significantly, he neither alleges nor offers evidence of any ordinance violation with respect to the second termination.

Since there is no contract with the City, and since there is no claim that the second termination violated the City's ordinances governing its employees, the summary judgment motion was properly granted as to the plaintiff's wrongful termination claims. For this reason, and the others discussed *supra*, the judgment against plaintiff is affirmed.

## B. Motion for Section 128.5 Sanctions

■ As noted previously, the City's motion for sanctions under section 128.5,[13] to compensate it for having been forced to defend against what it argued was a frivolous lawsuit, was denied by the trial court. At the same time, however, the court granted the City's request for sanctions under section 447[14] with respect to plaintiff's two motions, for reconsideration and for sanctions, respectively.

---

[12] Although *Read* concludes by loosely characterizing that case as one involving the breach of the "implied covenant of good faith" (*id.* at p. 445), it is clear that its ruling is based upon the conclusion that the City of Lynwood violated its own ordinances when it terminated its employee (*id.* at p. 443). Thus, contrary to plaintiff's assertions, it is no support for his contention that the City may be sued for wrongful termination on contractual theories.

[13] Subdivisions (a) and (b) of section 128.5 provide:

"(a) Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. This section also applies to judicial arbitration proceedings under Chapter 2.5 (commencing with Section 1141.10) of Title 3 of Part 3.

"(b) For purposes of this section:

"(1) 'Actions or tactics' include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint. The mere filing of a complaint without service thereof on an opposing party does not constitute 'actions or tactics' for purposes of this section.

"(2) 'Frivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party."

[14] Subdivision (a) of section 447 provides: "The signature of an attorney or party constitutes a certificate by him or her that he or she has read the pleading, motion, or other paper; that to the best of his or her knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this section, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other

Section 447 requires that an award of sanctions must be accompanied by a written order which recites "the circumstances justifying sanctions." In that portion of its order pertaining to the motion for reconsideration of the granting of the summary judgment motion, the court found that the contention upon which reconsideration had been urged, i.e., "that a public employer who has failed to afford an employee his or her *Skelly* rights cannot correct its error by reinstating the employee with back pay and then follow the procedure mandated by *Skelly*, is contrary to settled law and is so baseless as to be frivolous and in violation of C.C.P. § 447(a)."

As discussed above, this same meritless contention was not only the basis of the reconsideration motion, but was also the fundamental argument upon which plaintiff's entire action rested. Thus, in finding that this contention was frivolous, the trial court in effect found that the entire action was frivolous. The trial court denied the City's motion under section 128.5 despite this finding.

The City recognizes that the imposition of sanctions by a trial court is a matter subject to "the broad discretion accorded it by the Legislature" (*Luke* v. *Baldwin-United Corp.* (1985) 167 Cal.App.3d 664, 668 [213 Cal.Rptr. 654]), but submits that the trial court's denial, in the face of its own finding that the action was frivolous, was an abuse of discretion.

In opposing the imposition of any sanctions, the plaintiff argued in the trial court that: the City was barred from recovering any sanctions by *City of Long Beach* v. *Bozek*;[15] and, in any event, the action was not brought in bad faith, since plaintiff honestly believed in the merit of his case, which belief was reinforced "by five decisions of three different judges in response to three demurrers, a request for a rehearing and a [petition for a] Writ of Mandamus . . . ." Similarly, on appeal plaintiff emphasizes that his counsel was proceeding "in good faith," citing the fact that, prior to the hearing on the motion for sanctions, none of the commissioners or judges who had previously considered the case had intimated that they thought that the case was frivolous. In addition, plaintiff attacks the trial court's finding that the action was frivolous, contending that the sole support for the existence of such a finding is the order drafted by counsel for the City.

As will be seen, while we disagree with the plaintiff's contentions, and personally find unpersuasive his alleged justifications for prosecuting this

---

party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee. Sanctions may be imposed only after notice and opportunity to be heard. An order imposing sanctions shall be in writing, and shall recite in detail the circumstances justifying sanctions."

[15] *City of Long Beach* v. *Bozek* (1982) 31 Cal.3d 527 [183 Cal.Rptr. 86, 645 P.2d 137], certiorari granted and judgment vacated, (1983) 459 U.S. 1095 [74 L.Ed.2d 943, 103 S.Ct. 712], and opinion reiterated, (1983) 33 Cal.3d 727.

meritless claim, we nevertheless must affirm the trial court's denial of any sanctions.

### 1. *City of Long Beach* v. *Bozek*

Plaintiff cited *City of Long Beach* v. *Bozek, supra,* for the proposition that a governmental defendant is constitutionally barred from recovering section 128.5 sanctions against a plaintiff who has brought a frivolous action. Our affirmance does not rest upon this contention, since plaintiff's characterization of the holding of *Bozek* is entirely wrong: The Supreme Court said exactly the opposite of what plaintiff has argued.

In *Bozek,* a citizen had unsuccessfully sued the City of Long Beach for false imprisonment and related torts arising out of alleged misconduct by the Long Beach police. The city then sued the former plaintiff for malicious prosecution. In holding that the demurrer to the city's action had been properly sustained, the Supreme Court held that "the act of filing suit against a governmental entity represents an exercise of the right of petition and thus invokes constitutional protection." (31 Cal.3d at p. 534.) Finding that the exercise of that right would be impermissibly chilled should the government be allowed to retaliate with an action for malicious prosecution, the court further held that such suits against the government are "absolutely privileged and cannot form the basis for imposition of civil liability for malicious prosecution." (*Id.* at pp. 538-539.)

The court did *not,* however, hold that the unsuccessful litigant was similarly immune from a sanction award under section 128.5. To the contrary, the court cited the availability of such sanctions as "a clearly preferable remedy to an independent action for malicious prosecution" which would "provide an adequate deterrent to unwarranted lawsuits *without unduly infringing upon the right of petition.*" (31 Cal.3d at p. 538, italics added.)

Thus, far from being constitutionally prohibited, the imposition of sanctions under section 128.5 has been specifically endorsed by the Supreme Court as a proper vehicle by which a governmental entity may recover the attorney's fees which it incurs in defending against a frivolous action. Plaintiff's reliance upon *Bozek* as a reason why sanctions should not be imposed in this case is therefore entirely misplaced.[16]

---

[16] Had the record indicated that the trial court had mistakenly accepted plaintiff's interpretation of *Bozek* as the reason for denying the City's motion for sanctions, we would remand the matter for further consideration as to the propriety of imposing sanctions. However, that does not appear to be the case. In its oral remarks, the trial court appeared to recognize the distinction which the Supreme Court had made between damages for malicious prosecution

## 2. *The Finding of Frivolousness*

■ Plaintiff argues, in substance, that no weight ought to be given to the trial court's finding that the action was frivolous, since it is contained in an order drafted by the City's counsel, and since "nowhere in . . . the summary judgment hearing of March 10, 1989[,] did the trial judge ever state or so much as intimate that he considered Appellant's action to be 'frivolous' in nature."

While the City's attorneys did draft the order containing the findings required by section 447, that order was signed by the trial court. Plaintiff apparently assumes that the trial court signed the order without reading it, and thus did not intend to make the finding upon which the City relies. We do not and will not make such an assumption. When the law requires that an order recite the evidence upon which a certain ruling is based, it not only is common practice to shift the burden of the preparation of that order onto counsel, but is entirely appropriate to do so. (Cf. *Tera Pharmaceuticals, Inc.* v. *Superior Court* (1985) 170 Cal.App.3d 530, 532 [215 Cal.Rptr. 923].) We are not willing to assume that a formal order is mistaken, or that a particular finding therein is inadvertent, merely because it was drafted by counsel rather than by the judge who signed it.

That is particularly true when, as is the case here, the oral remarks made by the trial judge are consistent with the disputed finding. While there may not have been any discussion of the frivolousness of plaintiff's action at the hearing on the summary judgment motions,[17] the same cannot be said of the hearing on the motion for sanctions. There, in the course of indicating that he was reconsidering his tentative ruling to deny the motion for sanctions, the trial judge said:

". . . I don't think the case was really frivolous when it was filed, I think it was premature, but it got frivolous and more frivolous as it went on.

"That's the way I feel about it, so I don't know whether or not it's incumbent upon me now to look back to all those things, and try to determine whether or not it was frivolous, but I will say this: when I went over this, I—I got it back here, and especially when I had a motion to reconsider,

---

and sanctions to compensate a city for costs and attorney fees incurred in the defense of frivolous actions.

[17] In connection with the summary judgment motions, neither side invoked section 128.5, 447, or 1038, or subdivision (i) of section 437c. Therefore, the alleged frivolousness of the plaintiff's action was not before the court at that time. That being the case, it is difficult to understand how plaintiff can derive any comfort from the fact that the judge hearing those motions did not offer a gratuitous opinion as to whether the action was or was not frivolous.

which is totally frivolous, it made me wonder if sanctions were not in order for the whole thing, because—Mr. Blay, this is, to me this was a frivolous law suit, absolutely.

"There was a mistake made. People do make mistakes. It was corrected, new charges were brought, and your client did not even bother to respond to it, then decided to file a law suit and pursue it.

"I think—to me, that is frivolous."

Moments later, the judge reiterated that "[t]here is a lot of merit in [the City's] position, as I have stated, that the whole action is frivolous from the beginning . . . ."

Ultimately, the court took the entire motion under submission. The order which it finally signed is not inconsistent with the sentiments just quoted. Thus, we have no reason to doubt that the trial court intended to find that the action was frivolous.[18]

### 3. *The Requirement of Bad Faith*

 Having established that there is no constitutional bar to the imposition of sanctions under section 128.5 in favor of a governmental defendant and against a plaintiff, and that the trial court found plaintiff's action to be frivolous, the City argues that the trial court abused its discretion in not awarding sanctions here. It reasons as follows: (1) section 128.5 authorizes the imposition of sanctions for frivolous actions; (2) the statute defines a frivolous action as being one which is *either* "totally and completely without merit" (an objective standard), *or* "for the sole purpose of harassing an opposing party" (a subjective standard); (3) the trial court found that the action was "baseless," i.e., objectively frivolous; therefore, (4) the court should have imposed sanctions, without regard to whether the action was also subjectively frivolous, or otherwise brought with a improper motive.

We reject the City's conclusion because its analysis of section 128.5 is wrong. By its own terms, that statute authorizes the imposition of sanctions only for "actions or tactics" which are *both* frivolous *and* in "bad-faith." Since the trial court made neither express nor implied[19] findings of bad faith, we cannot find that its denial of sanctions is wrong.

---

[18]Certainly, we do not disagree with such a finding. As discussed previously, each of plaintiff's causes of action is not only without merit, but is unsupported by any substantial authority or reasoned analysis which would raise an arguable issue.

[19]" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent . . . .' " (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) Thus, in the absence of contrary findings, "we must presume in favor of the judgment every finding

Section 128.5 authorizes a trial court to order a party to pay the expenses "incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay . . . ." (*Id.*, subd. (a).) Subdivision (b)(2) of the section states: " 'Frivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party." Thus, by the very language of the statute, it applies, not to all actions or tactics that are frivolous, but only to bad faith actions or tactics that are frivolous.

We are compelled to this conclusion by the rule of statutory construction which requires that " '[i]f. possible, significance should be given to every word, phrase, sentence and part of an act,' " and that " 'a construction making some words surplusage is to be avoided.' " (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) To interpret section 128.5 as authorizing the imposition of sanctions solely upon a consideration of whether the action was objectively frivolous would be to render the Legislature's use of "bad-faith" meaningless surplusage. That term is given meaning only if we assume that the Legislature intended that the court determine that an action or tactic was being pursued in subjective bad faith before imposing sanctions under this section.[20]

Another division of this court recently reached the same conclusion in *Llamas* v. *Diaz* (1990) 218 Cal.App.3d 1043 [267 Cal.Rptr. 427]. That court examined the legislative history of the statute to aid in its interpretation. The court noted that, as originally enacted in 1981, the statute referred to " 'tactics or actions not based on good faith which are frivolous or cause unnecessary delay.' " (italics omitted.) Not only did this language make it clear that sanctionable behavior had to be *both* frivolous *and* not based on good faith, but that is how it was interpreted at the time it was enacted. (*Llamas*, *supra*, at p. 1048, fn. 10, quoting from the Enrolled Bill Rep. to the Governor.)

When the statute was amended in 1984, the apparent purpose was to emphasize this subjective element in the behavior to be sanctioned. Thus,

---

of fact necessary to support it [that is] warranted by the evidence." (*Homestead Supplies, Inc.* v. *Executive Life Ins. Co.* (1978) 81 Cal.App.3d 978, 984 [147 Cal.Rptr. 22].) Accordingly, were a trial court to expressly find that an action was frivolous, as this one did, and then impose sanctions on the plaintiff, we would interpret the imposition of sanctions as an implied finding that the action was also brought in bad faith. That presumption is not justified when no sanctions were ordered.

[20] We acknowledge the possibility of an alternative view that a broader construction of section 128.5 would be more consistent with its stated purpose. However, we decline to ignore the language employed by the Legislature merely because of a subjective evaluation that a differently worded statute would more effectively achieve the statutory goal.

the Legislature specifically required that delay was not punishable unless it had been intentional, and that harassment was not sanctionable unless it had been the "sole purpose" of the action or tactic. While the bad faith requirement was reworded, there does not appear to have been any intention of deleting or limiting it. To the contrary, the analysis of the Assembly Committee on Judiciary was that the amendment " 'requires that such tactics or actions must be found to be *done in bad faith* prior to the imposition of sanctions. Such amendment would likely reduce the chilling effect on parties who wish to exercise appropriate litigation rights.' " (*Llamas, supra,* 218 Cal.App.3d at p. 1048.)

As the *Llamas* court noted, not all appellate courts who have considered this matter agree with this analysis. Many, analogizing to the analysis of *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179], have opined that the imposition of sanctions requires a finding of either subjective improper motive or objective frivolousness, but not both. In *Flaherty*, however, the Supreme Court was interpreting section 907 and California Rules of Court, rule 26(a), neither of which contain "language comparable to the requirement of section 128.5 that the conduct be both frivolous (or unnecessarily dilatory) *and* 'not based on good faith.' [Citations.] Therefore *Flaherty* does not appear to be authority for construing section 128.5 disjunctively." (*Abbett Electric Corp.* v. *Sullwold* (1987) 193 Cal.App.3d 708, 712, fn. 6 [238 Cal.Rptr. 496], review den.)

For both of these reasons, we decline to adopt the disjunctive interpretation of section 128.5 as stated or applied in: *Winick Corp.* v. *County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170, 1177 [230 Cal Rptr. 289]; *Weisman* v. *Bower* (1987) 193 Cal.App.3d 1231, 1236 [238 Cal.Rptr. 756]; *Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 12 [244 Cal.Rptr. 581], review denied; *County of Imperial* v. *Farmer* (1988) 205 Cal.App.3d 479, 484 [252 Cal.Rptr. 382]; and *Bach* v. *McNelis* (1989) 207 Cal.App.3d 852, 876 [255 Cal.Rptr. 232], review denied.[21]

Our interpretation of the statute does not impose a new or increased burden upon either litigants or the trial courts. In the context of this statute, "bad faith" means simply that the action or tactic is being pursued for an improper motive. Thus, if the court determines that a party had acted with the intention of causing unnecessary delay, or for the sole purpose of harassing the opposing side, the improper motive has been found, and the court's inquiry need go no further.

[21] In *Pyne* v. *Meese* (1985) 172 Cal.App.3d 392, 405 [218 Cal.Rptr. 87], a case relied upon by the City, the trial court expressly found that the behavior of the party whom he sanctioned was "frivolous and in bad faith." Given that finding, it is of little authority for the proposition that a finding of bad faith is unnecessary.

On the other hand, a showing that a party's action or tactic is totally and completely without merit does not settle the issue of whether that action or tactic was in bad faith. Such a showing is certainly evidence that the action is brought in bad faith (*Flaherty, supra,* 31 Cal.3d at p. 649), because a trial court is entitled to infer from the utter lack of merit that the party knew that it lacked such merit, and yet continued to pursue the action for some ulterior motive. However, the trial court may not be willing to draw that inference if it is convinced that, despite the complete lack of merit, the party was acting in the good faith (albeit erroneous and even unreasonable) belief that the action was meritorious. Thus, the inference of bad faith is one which the trial court may make, but it is not mandatory that it do so.

The significance of this distinction is illustrated in the case now before us. The trial court expressly found that the plaintiff's action was "so baseless as to be frivolous," which we interpret to be a finding that it was totally and completely without merit. Nevertheless, the court declined to impose any sanctions on the plaintiff for that frivolous behavior. We cannot adopt the City's conclusion—i.e., that it was an arbitrary abuse of discretion—when there is another permissible and reasonable alternative: that the trial court believed that the action had been initiated and prosecuted in the honestly held but erroneous belief that it was meritorious.

We must say that this court is not at all persuaded by plaintiff's explanation of his failure to recognize the fatal weaknesses in his case, particularly in the face of repeated demurrers which raised those defects. We are particularly unsympathetic to plaintiff's alleged reliance upon the erroneous rulings by the trial court on portions of those demurrers. A plaintiff has the affirmative duty to investigate his case to determine whether "it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law . . . ." (§ 447.) He cannot shift that obligation to the overburdened judges and commissioners of the law and motion departments.

However, it is immaterial whether this appellate court is convinced by the factual showing offered by the litigants before the trial court. Here, we must assume that the trial court was sufficiently convinced of plaintiff's good faith to deny the award of sanctions. We cannot substitute our judgment for his. The order denying the City's motion for sanctions must be affirmed.

## SANCTIONS FOR FRIVOLOUS APPEAL

Our decision regarding the sanctions under section 128.5 does not resolve the issue of whether sanctions are appropriate under section 907. We turn to that issue now.

In response to the request of the City for the imposition of sanctions for a frivolous appeal, we ordered the City to submit a declaration supporting the amount of the expenses which it had incurred in defending against the appeal, ordered the plaintiff and his counsel to file written opposition to the imposition of sanctions, and ordered the plaintiff and his counsel to appear and show cause why sanctions should not be imposed.[22]

The written arguments and evidence having been received and considered, and the hearing having been conducted, we now conclude that plaintiff's appeal was frivolous, and impose sanctions against plaintiff's counsel.

## A. DEFINITION OF FRIVOLOUSNESS

 Our law recognizes the danger that the possibility of sanctions will deter counsel from vigorously and responsibly advocating their client's cause. To minimize that danger, any definition of a frivolous appeal must be sufficiently narrow "to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous . . . ." (*In re Marriage of Flaherty, supra*, 31 Cal.3d at p. 650.)

Thus, an appeal, though unsuccessful, should not be penalized as frivolous if it "presents a unique issue which is not 'indisputably' without merit" (*Leiserson* v. *City of San Diego* (1988) 202 Cal.App.3d 725, 739 [249 Cal.Rptr. 28]), involves facts which are "not amenable to easy analysis in terms of existing law" (*Kappel* v. *Bartlett* (1988) 200 Cal.App.3d 1457, 1470 [246 Cal.Rptr. 815]), or makes a reasoned "argument for the extension,

---

[22] As noted, this order to show cause (OSC) was prompted by the City's request for such sanctions in its briefs. Since a brief may not contain any new evidentiary material, the City did not support its request with any declarations concerning the amount of expenses which it incurred in responding to the plaintiff's allegedly frivolous appeal, or any other evidence concerning the appropriate amount of sanctions to be awarded. Thus, in addition to the OSC, we have had to order the City to submit such declarations.

Recognizing that neither section 907 nor the California Rules of Court specify the procedure by which such issues are to be raised, we would advise counsel that this court would prefer that requests for sanctions for an allegedly frivolous appeal be contained in a separate motion, filed after the appellant's reply brief. Such a motion should be supported by points and authorities concerning the frivolousness of the appeal and the amount of the sanctions to be awarded, and by a declaration concerning the expenses incurred by the moving party as a result of the appeal. The time for the appellant to respond to the request for sanctions would then be governed by California Rules of Court, rule 41(a), without the need for this court to establish a customized briefing schedule in an order to show cause. The hearing on the motion would be scheduled concurrently with oral argument, or if oral argument has not been requested, on the day oral argument would otherwise have been scheduled.

modification, or reversal of existing law" (cf. § 447; Rules Prof. Conduct, rule 3-200(B)).

The Supreme Court has addressed this concern by establishing two independent standards for determining whether an appeal is frivolous, one subjective and one objective: "[W]hen it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty*, *supra*, at p. 650.)

## B. LACK OF MERIT

As discussed in detail in the first section of this opinion, we have determined that each and every one of plaintiff's contentions on appeal is erroneous. Our analysis did not involve any unique issues of law, nor were the facts so complex that a reasonable attorney would find them beyond his or her analytical abilities. To the contrary, we have no doubt that any reasonable attorney would have, and plaintiff's attorneys should have, recognized that plaintiff's appeal was totally and completely without merit. Rather than having a good chance of success, or even a slim chance, it had no chance.

That his appeal was hopeless from the beginning is clear from the number of barriers which plaintiff needed to overcome in order to obtain a reversal of the judgment against him. To prevail on his contractual cause of action, plaintiff needed to overcome not just one, but all three of the following defenses: (1) that the reinstatement had cured any compensable injury caused by the first termination; (2) that plaintiff was collaterally estopped from contesting the Council's findings that the first termination had been cured and that the second termination had been procedurally correct and for good cause; and (3) that public employment was based on statute, not contract. Success on any of his tort causes of action was even more remote, since he would have to overcome the reinstatement and collateral estoppel hurdles above, *plus* the governmental immunity defense, *plus* the failure to plead or prove a termination in contravention of public policy.

Far from overcoming all of these hurdles, plaintiff failed to clear any of them. Indeed, in one case, he failed to address the issue at all. In others, he failed to make any reasoned attempt to either criticize or distinguish the controlling authority relied upon again and again by the City.

For instance, to avoid the rule that reinstatement with backpay is the exclusive remedy for someone discharged in violation of his *Skelly* rights,

plaintiff contended that this rule should not apply when the reinstatement did not occur until after a governmental tort claim had been filed, or when the government has reinstated the employee with the express purpose of terminating him again. Plaintiff offered no authority for these distinctions, nor did he advance any reason for making such distinctions.

In response to the collateral estoppel defense, plaintiff ignored the issue entirely in his opening brief, even though this had been the City's primary argument in its motion for summary judgment. When the City again raised the issue in its opening brief, plaintiff disingenuously asserted that one of the Council's findings—i.e., that the first termination had been illegal—was consistent with his factual contentions, and thus there was no need to challenge the administrative ruling. What plaintiff conspicuously ignored is that the Council also found that the first termination had been resolved by the reinstatement and that the second termination was both substantively and procedurally proper, and that those findings were contrary to the factual assertions upon which his action depended.

The most egregious example of plaintiff's failure to objectively evaluate the merits of his legal contentions before filing his notice of appeal is his response, or lack of one, to the governmental immunity defense. This argument was fully briefed by the City in its summary judgment motion. Nevertheless, plaintiff's opening brief does not explain how he intended to avoid the application of the immunity statutes to his tort causes of action. Indeed, his opening brief does not mention the issue at all. Even after the City raised the immunities in its opening brief, plaintiff remained silent. He neither disputed the City's authority, nor conceded the lack of countervailing law. He thus tacitly admitted that his appeal of the three tort causes of action could not succeed.

The authorities which demonstrate the multitude of fatal defects in the legal and factual underpinnings of plaintiff's action were not hidden from plaintiff or his counsel. To the contrary, the City called attention to these defects again and again: in its three demurrers, in its motion for reconsideration of the ruling on one of its demurrers, in its petition for writ of mandate, in its motion for summary judgment, and in its response to plaintiff's motion for summary judgment. Any reasonable attorney would have recognized, long before the notice of appeal was filed, that the collective effect of those deficiencies was to render the City's defenses insurmountable.

In his written opposition, plaintiff argues that his successes in respect to the demurrers proves that his appeal is "not totally and completely without merit." He apparently reasons that since such reasonable legal minds as Commissioner Lee and Judge Moore overruled the City's demurrers, it

cannot be said that no reasonable attorney would agree with plaintiff's contentions on appeal, and thus it cannot be said that those contentions are objectively frivolous.

While this argument has a superficial appeal, it does not hold up to scrutiny. The demurrers did not raise all of the legal defects upon which the City based its motion for summary judgment, and the defects which were raised were not attacked with the same authorities. Thus, there has been no favorable judicial ruling on those defects.

This is particularly clear as to the three tort causes of action. Any recovery under the third, fourth and fifth causes of action is barred by the holding in *Foley* v. *Interactive Data Corp.*, *supra,* that tort damages for wrongful termination may not be awarded unless the termination violates public policy. Since *Foley* was not even cited until the motions for summary judgment, the rulings on the demurrers cannot be read as endorsements of plaintiff's contrary and erroneous interpretation of the law.

Similarly, the three tort causes of action are barred by the governmental immunities enjoyed by the City and its employees. Since the existence of these statutory immunities was first raised in the City's motion for summary judgment, the rulings on the prior demurrers did not evaluate the effect of those immunities at all.

All four causes of action, including the first for damages for the breach of an alleged implied-in-fact contract, are barred by the failure of the plaintiff to seek review of the Council's findings by a petition for writ of mandate under section 1094.5. This deficiency was raised in each of the three demurrers, but only indirectly, since the City always characterized the significance of that omission as plaintiff's failure to exhaust his administrative remedies, rather than in terms of collateral estoppel. This focus on administrative remedies led the trial court to incorrectly consider the doctrine of futility, and to repeatedly overrule the demurrers on that ground.

It was not until its motion for summary judgment that the City advanced the collateral estoppel defense, relying on the decision in *Knickerbocker* v. *City of Stockton, supra,* which correctly identified that doctrine as the bar to plaintiff's action. It is, we believe, no accident that once the confusion regarding the exhaustion of administrative remedies had been eliminated, the trial court granted the summary judgment motion against plaintiff. After that confusion was erased, there has been no judicial ratification of plaintiff's theory that he could maintain his action without challenging the City's administrative findings that the termination was procedurally proper and factually justified.

In short, the City in its motion for summary judgment offered authority for the existence of defenses to each of plaintiff's four causes of action which were different than those which had been rejected by the trial court in its rulings on the demurrers. Since those defenses had not been previously considered by the trial court, its prior rulings do not prove the reasonableness of plaintiff's contrary legal contentions.

■ Moreover, plaintiff ignores the relevant time frame for determining whether the legal contentions advanced on appeal are frivolous. The objective test in *Flaherty* recognizes that, prior to taking an appeal, an appellant, through his attorney, is obligated to engage in reasonable legal research to determine whether any colorable argument can be made that the judgment resulted from an error of law. That evaluation must be made on the basis of the law that is reasonably available to the attorney at the time that the judgment is entered. Thus, the relevant inquiry is not whether the rulings on the demurrers were reasonable interpretations of the applicable law at the time that they were decided, but whether the law at the time of the judgment arguably supports plaintiff's contentions.

In deciding to appeal, plaintiff apparently ignored the obligation to conduct a timely review of the applicable law, and instead relied upon rulings made months or years earlier which evaluated different legal claims on the basis of different authorities. Those rulings cannot excuse plaintiff's decision to prosecute this meritless appeal.

In summary, even assuming that the rulings on the three demurrers had been correct, the City offered sufficient new theories in its motion for summary judgment to establish a defense to each of the four causes of action remaining in plaintiff's complaint. The applicability of those defenses is not subject to any reasonable dispute. In the face of those defenses, this appeal is utterly devoid of any possibility of success, and is therefore frivolous.

## C. IMPROPER MOTIVE

It is clear that plaintiff and his counsel failed to heed the abundant and authoritative law which rendered this appeal hopeless from the beginning. It is less clear whether that failure stems from an inexcusable inability to recognize the significance of that law, or from a conscious and stubborn refusal to allow that law to alter the intended course of their litigation.

■ Nevertheless, we need not decide the precise cause. Having determined that the appeal is frivolous on an objective standard, it is unnecessary to determine whether plaintiff has initiated and prosecuted the appeal with an improper motive.

## D. Amount of Sanctions

An appellant guilty of prosecuting a frivolous appeal is liable for the damages caused: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." (§ 907.) The damages for which compensation may be ordered include the costs and attorney's fees incurred by the respondent in defending against the appeal (*Otworth* v. *Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 461 [212 Cal.Rptr. 743]), as well as the expense incurred by the appellate court in processing, reviewing, and deciding the appeal (*Finnie* v. *Town of Tiburon; supra*, 199 Cal.App.3d 1, 17 [244 Cal.Rptr. 581], review den.).

Moreover, in imposing sanctions, the court is not limited to compensatory considerations; rather, it may also require the payment of sums sufficient to discourage similar conduct in the future. (Cal. Rules of Court, rule 26(a);[23] *Bank of California* v. *Varakin* (1990) 216 Cal.App.3d 1630, 1639-1640 [265 Cal.Rptr. 666], review den. [imposing sanctions of $25,000, payable to the court, to compensate the taxpayers and "to deter like conduct in the future"].)

As part of our order to show cause, we instructed the City to file a declaration "concerning the amount of sanctions being requested by them . . . ." In its declaration, the City seeks an award against counsel for the plaintiff in the sum of $13,175.10, representing the attorney's fees and other expenses incurred by it in connection with these reciprocal appeals. Of this sum, the City acknowledges that $6,158.43 is attributable to its own appeal of the denial of its motion for section 128.5 sanctions. Thus, by its evidence, the City has incurred expenses of $7,016.67 in defending against plaintiff's frivolous appeal. Plaintiff has not contested the reasonableness of that sum in his response to our OSC, and neither do we.

Following plaintiff's response, the City submitted a reply, together with a supplemental declaration which describes the time incurred in evaluating that response and formulating that reply. The City claims to have incurred 14.5 hours, representing $1,812.50 in attorney's fees. While that reply does, in part, respond to the arguments made in plaintiff's opposition, it consists largely of an unnecessary recapitulation of those portions of the City's briefs dealing with the frivolousness of plaintiff's action.

---

[23] Rule 26(a) provides in relevant part: "Where the appeal is frivolous or taken solely for the purpose of delay or where any party . . . has been guilty of any other unreasonable infraction of the rules governing appeals, the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as . . . the discouragement of like conduct in the future may require."

Accordingly, a reasonable estimation of the damages suffered by the City in responding to plaintiff's meritless appeal is the sum of $7,916.67, representing $7,016.67 in fees and costs incurred in the briefing process, and $900 of the over $1,800 incurred in regard to the OSC. We impose sanctions in that sum to compensate the City to that extent.

The City, of course, is not the only entity which has been forced to incur unnecessary expense as a result of this appeal. While no exact calculation of damages caused by this particular appeal is possible, one court has calculated that the average civil appeal costs this court, and thus the taxpayers of this state, at least $2,324.[24] (*Finnie* v. *Town of Tiburon, supra*, 199 Cal.App.3d at p. 17.) As noted above, in addition to compensating the respondent, an award of sanctions may also be crafted to compensate the taxpayer for these expenses, and to deter frivolous appeals in the future. We impose further sanctions in the sum of $2,324 for that purpose.

### E. Liability for Sanctions

■ Having determined the amount of sanctions to be paid, there remains the question of who will pay them. Prior decisions of the courts of this state have variously imposed the liability for such sanctions on the appellant, on the appellant's counsel, or on both, without enunciating any general rules to govern that allocation of responsibility. Here, however, we believe the burden of paying the sanctions most properly belongs exclusively to plaintiff's counsel.

There is no evidence that plaintiff was personally involved in urging that the appeal be taken, as opposed to merely adopting the advice of his counsel. There is no indication that plaintiff had any legal training or experience which may have tempted him to conduct his own evaluation of the legal merits of the appeal. Furthermore, while plaintiff would obviously have benefitted had the appeal been successful, we cannot conceive of any manner in which this plaintiff would benefit from delaying the finality of the underlying judgment. Similarly, it seems unlikely that the appeal was undertaken with the intent of harassing the City, given the relative financial strength of the two sides.

Given the lack of any evidence implicating the plaintiff individually, we are forced to conclude that this appeal resulted solely from the failure of plaintiff's counsel to adequately research the merits of plaintiff's case prior to undertaking the appeal of the adverse judgment.[25] Since each of the issues

---

[24] In our estimation, the cost of considering this particular appeal has been far greater.

[25] See, e.g., *Moore* v. *El Camino Hosp. Dist.* (1978) 78 Cal.App.3d 661, 664 [144 Cal.Rptr. 314] ["There is no indication that appellant . . . is primarily at fault in the taking of the

raised in the appeal had already been adequately briefed by the City in its memoranda supporting and opposing the two motions for summary judgment, that failure is particularly inexcusable.

Plaintiff's counsel, both at trial and on this appeal, has been the law firm of John E. Fitzgerald & Associates. John E. Fitzgerald III signed the opening brief. Morton Gollin signed the reply brief and the written response to our OSC. From these facts, and particularly from the comments of both attorneys at the hearing on the OSC, it appears that this frivolous appeal is the joint product of the professional judgment of both Mr. Fitzgerald and Mr. Gollin. Therefore, the consequences of this appeal should be borne jointly and severally by Mr. Fitzgerald and Mr. Gollin.

## DISPOSITION

The summary judgment and the order denying the City's motion for sanctions under section 128.5 are affirmed.

John E. Fitzgerald III and Morton Gollin shall pay to the City of Cathedral City, within 30 days of the issuance of the remittitur, the sum of $7,916.67, which sum includes all recoverable costs on appeal. In addition to the sum payable to the City, John E. Fitzgerald III and Morton Gollin shall pay to the clerk of this court, within 30 days of the issuance of the remittitur, the sum of $2,324.

Dabney, J., and Timlin, J., concurred.

---

appeal. We therefore deem it appropriate to assess the penalty against her counsel."] and *Hale* v. *Laden* (1986) 178 Cal.App.3d 668, 676 [224 Cal.Rptr. 182] [sanctions imposed on counsel where there was no evidence that the appellant "was personally involved in continuing the appeal"].