Filed 11/17/14  Prado v. County of Riverside CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| THOMAS PRADO, | |
| Plaintiff and Appellant, | E058796 |
| v. | (Super.Ct.No. RIC473510) |
| COUNTY OF RIVERSIDE et al. | **OPINION** |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  John W. Vineyard, Mac R. Fisher, and Daniel A. Ottolia, Judges.[1]  Affirmed.

Aviles & Associates and Moises A. Aviles for Plaintiff and Appellant.

Kinkle, Rodiger and Spriggs, Bruce E. Disenhouse, and Janine L. Highiet-Ivicevic for Defendants and Respondents.

---

[1]  Judge Vineyard sustained a demurrer without leave to amend.  Judge Fisher ordered the entire action dismissed.  Judge Ottolia entered the formal written order of dismissal.

1

Plaintiff Thomas Prado sued the County of Riverside (County) and others, alleging that sheriff's deputies failed and refused to remove trespassers from his property. These trespassers allegedly harassed Prado and eventually stole or destroyed $379,000 worth of his personal property.

The operative complaint asserted a single cause of action for violation of federal civil rights under 42 United States Code section 1983 (section 1983). The trial court sustained the County's demurrer, without leave to amend, on the grounds that Prado had not alleged that the deputies were acting pursuant to a municipal policy or custom and had not alleged any specific constitutional violation. Prado appeals. We will affirm.

I

FACTUAL BACKGROUND

The following facts are taken from the allegations of the operative complaint.

Prado owns a piece of real property in the County. Some trespassers started living on his property "in makeshift camp sites."

Prado repeatedly asked Riverside sheriff's deputies to remove the trespassers. He specifically asked the deputies to proceed pursuant to Penal Code section 602, subdivision (o).[2] However, they failed and refused to take any action. Two deputies told

---

[2]     This subdivision, as relevant here, makes it a misdemeanor to "[r]efus[e] or fail[] to leave land . . . belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer at the request of the owner, . . . and upon being informed by the peace officer that he or she is acting at the request of the owner, . . . or (2) the owner . . . ."

Prado that "the situation was 'beyond their job description/responsibilities,'" but it would warrant an investigation by the gang crime unit, and they would refer it to the gang crime unit.

The trespassers started to "engage[] in suspicious and/or criminal activities . . . ." They became hostile and verbally abusive. They threatened Prado and his family with bodily harm. He avoided going on the property because he was afraid. At some point, the trespassers stole or destroyed $379,000 worth of his personal property that had been stored on the property.

According to Prado, the sheriff had instructed his deputies not to enforce the misdemeanor laws because the county jails were overcrowded. The deputies also did not enforce the law because Prado "was not 'rich enough,' . . . he was Latino, and/or he was not a regular contributor to the County Supervisor's campaign . . . ."

Prado further alleged that: "Defendant County and any Defendant in his/her official and/or individual capacity knowingly, or grossly negligently, or with deliberate indifference to the rights allegedly violated, conspired to cause to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in this pleading, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, conspired to violate civil rights, so that each one of them is legally

3

responsible for all the injuries and/or damages sustained by the Plaintiff pursuant to the principles set forth in *Monell v. New York City Dept. of Social Services* and its progeny. Furthermore, the actions of Defendants City [*sic*], and County, each follow a policy of 'no policy' in protecting the rights of property owners, and that [*sic*] the individual Defendants have demonstrated a lack of training and guidance in the protecting of the constitutional and civil rights regarding the protection of property owners."

Prado concluded that defendants' alleged conduct violated due process and equal protection.

II

PROCEDURAL BACKGROUND

Prado filed the original complaint in this action in 2007. The named defendants were the County, Sheriff Bob Doyle, Deputy Larson, Deputy Roth, Deputy Holbrook, Deputy Ortiz, Deputy Cortez, Deputy Cameron, Deputy Jantz, Candace O'Gara, and one "Erica."

The County and the other defendants filed answers. Two and a half years later, however, the County moved for judgment on the pleadings. After the trial court stated a tentative ruling, Prado requested leave to amend, which the trial court granted.[3]

---

[3] The County claims that its motion for judgment on the pleadings was "implicitly granted." The record does not support this. Rather, the motion for judgment on the pleadings was mooted by Prado's request for leave to amend.

4

Prado filed a first amended complaint.  The County filed a demurrer.  The trial court sustained the demurrer — with leave to amend as to one cause of action, but without leave to amend as to all other causes of action.[4]

Prado then filed a second amended complaint against the same defendants (except that Erica was omitted).[5]  It asserted just one cause of action, for violation of federal civil rights.  (42 U.S.C. § 1983.)

The matter was set for trial.  Meanwhile, the County filed a demurrer.[6]  It argued that:

1.  The County had statutory immunity under Government Code section 815.

2.  The complaint failed to allege any specific constitutional violation.

3.  The complaint failed to allege that defendants were acting pursuant to a policy, ordinance, regulation, or custom.

The trial court sustained the demurrer without leave to amend.  It found "no authority presented that . . . the sheriff's department had a duty to arrest the trespassers . . . ."  It also agreed that Prado had failed to allege "a policy, practice, et cetera . . . ."

---

[4]  Prado does not contend that it was error to sustain the demurrer to the first amended complaint.  The first amended complaint and the demurrer to it are not even in the record.

[5]  The County claims that the individual defendants had been dismissed in January 2011.  The record does not support this.  In any event, Prado named them again in the second amended complaint, filed in March 2011.

[6]  The individual defendants did not join in the demurrer.  However, the County claimed that it had been "erroneously sued" in their names.

On the date set for trial, there was no appearance by any of the parties. The trial court ordered the entire action dismissed without prejudice.[7] It then entered a formal written order of dismissal.

## III

## STANDARD OF REVIEW

"'[T]he state courts of California should apply federal law to determine whether a complaint pleads a cause of action under section 1983 sufficient to survive a general demurrer.' [Citation.] For the purposes of a demurrer to 'a section 1983 complaint, the allegations of the complaint are generally taken as true. [Citation.]' [Citation.] When a section 1983 complaint is prepared by counsel, '"[t]he controlling standard . . . is that an action may be dismissed for failure to state a claim only if it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Furthermore, a pleading is insufficient to state a claim under the Civil Rights Act if the allegations are mere conclusions. [Citations.] Some particularized facts demonstrating a constitutional deprivation are needed to sustain a cause of action under

---

[7] Prado does not contend that the trial court erred by dismissing the entire action, as opposed to dismissing it solely as against the County. We deem him to have forfeited any such contention.

In any event, assuming the individual defendants were still parties, the trial court properly dismissed the action as to them when Prado failed to appear on the date set for trial. (Code Civ. Proc., § 581, subd. (b)(3).)

6

the Civil Rights Act.  [Citations.]'  [Citation.]"  (*Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 891.)

"Our standard of review of an order sustaining a demurrer is well settled.  We independently review the ruling on demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action.  [Citation.]  In doing so, we 'give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.  [Citations.]'  [Citation.]"  (*Parthemore v. Col* (2013) 221 Cal.App.4th 1372, 1378.)

"' . . . "We affirm if any ground offered in support of the demurrer was well taken but find error if the plaintiff has stated a cause of action under any possible legal theory.  [Citations.]  We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale.  [Citation.]"  [Citation.]'  [Citation.]"  (*RealPro, Inc. v. Smith Residual Co., LLC* (2012) 203 Cal.App.4th 1215, 1219 [Fourth Dist., Div. Two].)

IV

IN THE ONLY INSTANCE IN WHICH A POLICY OR CUSTOM WAS ALLEGED,

NO CONSTITUTIONAL VIOLATION WAS ALLEGED

One of the grounds of the County's demurrer was that the complaint failed to allege any specific constitutional violation.  Another was that the complaint failed to

7

allege that defendants were acting pursuant to a policy, ordinance, regulation, or custom. The trial court sustained the demurrer on both grounds.

Section 1983, as relevant here, provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

"Under *Monell* [*v. New York City Dept. of Social Services* (1978) 436 U.S. 658], local governments 'can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, . . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.' [Citation.] Local government includes counties as well as cities. [Citations.]

"However, 'a municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior theory*.' [Citation.] Thus, 'a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the

8

injury that the government as an entity is responsible under § 1983.' [Citations.]" (*Pitts v. County of Kern* (1998) 17 Cal.4th 340, 348-349.)

Prado's complaint includes a boilerplate allegation that defendants had "an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in this pleading . . . ." However, this is a legal conclusion, unsupported by any facts. '[A] complaint stating only "bare legal conclusions," even under notice pleading standards, is not enough to survive a Rule 12(b)(6) motion. [Citation.]' (*Bissessur v. Indiana University Bd. of Trustees* (7th Cir. 2009) 581 F.3d 599, 602; see also *Revene v. Charles County Com'rs* (4th Cir. 1989) 882 F.2d 870, 875 [section 1983 claims are properly dismissed where "critical allegations of a municipal policy . . . are asserted entirely as legal conclusions."].)

Prado claims that he also pleaded a policy or custom by alleging that some deputies told him that the matter was "'beyond their job description . . . .'" In the same breath, however, the deputies also said the gang crime unit could and should investigate. Thus, if this was a policy at all, it related solely to who was supposed to investigate; it was not a policy of failing or refusing to investigate at all.

There is one and only one instance in which Prado has even arguably pleaded a municipal policy in a nonconclusory manner — when he alleges that the sheriff had instructed deputies not to enforce the misdemeanor laws because the county jails were

overcrowded.[8]  In this particular instance, however, he has failed to allege a constitutional violation.

Failure to enforce a state law, standing alone, is not a federal constitutional violation.  "The Constitution generally does not require the state to 'protect the life, liberty, and property of its citizens against invasion by private actors.'  [Citation.] Consequently, the state's failure to protect an individual from 'harms inflicted by persons not acting under color of law' will not ordinarily give rise to § 1983 liability.  [Citation.]" (*Shanks v. Dressel* (9th Cir. 2008) 540 F.3d 1082, 1087, fn. omitted; see generally *Castle Rock v. Gonzales* (2005) 545 U.S. 748 [police failure to enforce protective order did not violate due process]; *DeShaney v. Winnebago County Dept. of Social Services* (1989) 489 U.S. 189 [failure to protect child from parent after abuse reports did not violate due process].)

We therefore conclude that the trial court properly sustained the County's demurrer without leave to amend.

V

FRIVOLOUS APPEAL SANCTIONS

In their brief, defendants request attorney fees as frivolous appeal sanctions.  (See Code Civ. Proc., § 907.)

---

[8]     This assumes that the Sheriff was acting as final policymaker on behalf of the County.  (But see *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 839 [in conducting criminal investigation, sheriff acts for state, not county].)

There is a clearly prescribed procedure for obtaining frivolous appeal sanctions; it requires a timely motion, as well as a declaration supporting the amount of sanctions sought. (Cal. Rules of Court, rule 8.276.) Because defendants have disregarded this procedure, we deny their request. (See *Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1074, fn. 22 [Fourth Dist., Div. Two].)

## VI

## DISPOSITION

The judgment is affirmed. Defendants are awarded costs on appeal against Prado.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.